No. 2264.

THE CITY OF WAXAHACHIE *v.* CHARLES E. BROWN ET AL.

1. STATUTE CONSTRUED—BONDED INDEBTEDNESS OF TOWNS.—Construing Article 3783, Revised Statutes, in the light of the public policy evinced by constitutional and statutory provisions referred to in the opinion, the conclusion announced, that it was not intended by that Article to give to such towns as should assume control of their public schools, the right not only to buy building sites and erect school houses, but also to create a bonded indebtedness in furtherance of that object.

2. SAME.—If such towns should be regarded as possessing the power to create a bonded indebtedness in order to buy land and build educational structures thereon, no limitation could be found in the statutes upon the amount of debt they might contract for such a purpose. This would contravene the policy of the State, as shown in legislation regarding cities organized under general laws, whose power to impose taxes is carefully restricted.

3. SAME.—The power to borrow money or to create a debt without limit, is not a necessary incident of the power conferred on a town corporation to buy grounds and build school houses, and can not be implied, when its exercise by larger municipal corporations is only authorized under express limitations by organic and statute law.

4. SAME.—The special charter granted the town of Waxahachie on the twenty-eighth of April, 1871, conferred no greater power, regarding the creation of debt to purchase ground and build school houses, than did the general law on towns incorporated under it.

5. CASES REVIEWED AND DISTINGUISHED.—Hitchcock v. Galveston, 96 U. S., 341, and Galveston v. Loonie, 54 Texas, 517, reviewed and distinguished from this case.

6. STATUTES CONSTRUED—CITY BONDS.—The proviso in Article 420 of the Revised Statutes, limiting the amount of the bonded debt of cities, includes every character of bonded indebtedness.

7. CITIES AND TOWNS—MUNICIPAL BONDS.—An incorporated town exceeded its powers by contracting to issue its bonds in the purchase of ground for public free school purposes. Afterwards the town adopted the provisions of the Revised Statutes (Title 17) and became under general law, a city. As a city it could have issued the bonds under the limitations of the statute. Suit was brought against the city to compel specific performance of the contract with the former town, to issue bonds; if issued, and added to the existing debt against the city, including railway subsidy bonds, the city debt would exceed six per cent. of the taxable values of the city, *held:*

    (1) The purchase was not ratified by the act of the corporation when it adopted the permission of the statute and became a city.

    (2) The city had no power to ratify a purchase involving the issuance of bonds in contravention of the authority of the town when the contract was made, and which, if ratified, would involve the issuance of bonds in excess of the amount the city could lawfully issue.

    (3) The presumption would obtain, that an amount of unappropriated money in the city treasury, which, if applied to payment of bonded debt, would so reduce it that the city could issue bonds on the contract without exceeding the legal limits of its debt, would be applied to interest and sinking fund, and not to the reduction of the principal debt.

    (4) The policy of the law is not only to restrict municipal corporations in the issuing of bonds, but in contracting debts, as well.

    (5) The city was neither bound to issue bonds nor to pay the purchase money for the property.

    (6) The vendors of the land were entitled to a judgment against the city for the recovery of the land bargained to the town, and for the value of its use and occupation, less the enhancement in its value by reason of permanent improvements erected by the city on the property.

APPEAL from Ellis. Tried below before the Hon. Eugene Williams.

Appellees brought this suit on the twenty-second day of Feb-

ruary, 1886. They alleged that on or about the first day of August, 1884, they contracted with the board of trustees of public free schools of the town of Waxahachie, to sell to the town ten acres of land situated within the corporate limits, upon which were valuable school buildings, known as Marvin College; that the consideration agreed upon was fifteen thousand dollars, to be paid as follows: The town of Waxahachie assumed a mortgage then existing upon the property of six thousand dollars, due August 1, 1887, with seven per cent interest per annum, payable semi-annually, and other interest notes, payable semi-annually until 1887, for ninety dollars each; that the remaining nine thousand dollars should be paid by the town of Waxahachie, executing in bonds, ninety in number, of the denomination of one hundred dollars each, payable to bearer, with interest at ten per cent, interest payable annually, bonds to run ten years, the town of Waxahachie reserving the option, after four years, to redeem said bonds. Appellees alleged that the board of aldermen of the town ratified and approved of the contract, both by ordinance and by attempting at one time to issue said bonds, etc.; that the board of trustees of public free schools, with the consent of appellees, took possession of the property, and in many ways treated it as their own, and had ever since, and were still, using it for public free school purposes; that they made out a deed to the property, duly acknowledged, and deposited the same with B. F. Hawkins, county clerk, awaiting the delivery of the bonds; that the deed conveyed the property to the board of trustees of public free schools of the town of Waxahachie. Appellees further alleged that on the seventh day of May, 1885, the town of Waxahachie, in due and proper form, adopted the provision of the Revised Statutes, Title 17, and thereby became the city of Waxahachie.

They prayed, first, for a specific performance of the contract as alleged; second, for judgment and foreclosure of their vendor's lien; third, for rents and restitution of the property; fourth, for general and special relief, etc.

Appellant answered by general denial, general demurrer and special exceptions: That the town of Waxahachie, under its charter, had no power to make such contract or purchase as alleged by appellees; that all the acts charged against them were and are *ultra vires;* that the taxable property of the town of Waxahachie was insufficient to authorize the creation of a debt as charged; that there was no authority given in the charter of

Waxahachie to create any debt, levy taxes therefor, or to issue bonds for any purpose whatever; that at the time of the alleged contract, and at the present time, the town of Waxahachie had outstanding valid and subsisting bonds, issued by special Act of the legislature, to an amount, when aggregated with its bonds prayed for in appellees' petition, far exceeding six per cent of the value of the property of said town subject to ad valorem taxes. Appellants, in their answer, disclaimed all right, title and interest in and to the property alleged to have been purchased by them.

Appellants, however, pleaded that if, upon final hearing, it be adjudged that appellees were entitled to recover rents for said property, the improvements put upon said property by the board of trustees be considered by the court. The district court rendered judgment for appellees, enforcing a specific performance of the contract as alleged by them, commanding the city of Waxahachie to issue its bonds, etc., and adjudging the liability of appellants to pay the six thousand dollar mortgage debt, with interest, etc.

*M. B. Templeton*, for appellant, cited State Constitution, Article 11; Acts of 1885, page 99; Desty on Taxation, volume 2, page 1173; Daniel on Negotiable Instruments, volume 2, third edition, section 1555a; Wells v. Supervisors, 102 United States (2 Otto), 625; Charter of Waxahachie; Dill, volume 1, second edition, page 173, and notes; Daniel on Negotiable Instruments, volume 1, section 420, and note 5; Cooley's Constitutional Limitations, fifth edition, pages 233, 234, and notes; 20 Wallace, 659, 660; Clemens on Corporate Securities, 37; Cooley on Taxation, 524; Dill, second edition, section 749; Amendment to Constitution, Acts 1884, pages 3, 84; Revised Statutes, Article 3785; Acts of 1881, page 63; 57 Texas, 236; Dill, volume 2, second edition, section 749; 54 Texas, 523; Wait, volume 2, pages 494, 495; Clemens on Corporate Securities, 41; 21 Wallace, 321; Acts 1881, page 63

*Seth Shepard*, for appellees: On the proposition that the written propositions and acceptances, the resolutions of the board of trustees and ordinances of the board of aldermen of the town, the execution of the deed and delivery of possession, constitute a valid contract of sale, of which specific performance can be enforced, cited City of Galveston v. Morton, 58 Texas, 409; Leach v. Dodson, 64 Texas, 185; San Antonio v. Lewis, 9 Texas, 69; Patton v. Rucker, 29 Texas, 402.

That the town of Waxahachie, after assuming exclusive control of its public free schools, was invested with the power and it became its duty, to purchase building sites, school buildings, etc., and to levy a tax not to exceed one-fourth of one per cent, to assist in paying for the same, he cited Revised Statutes, Article 3783; Constitutional amendment of 1883, Article 8, section 9; Act of March 12, 1885, General Laws 1885, page 99; Dwyer v. Hackworth, 57 Texas, 245; Galveston v. Loonie, 54 Texas, 517; 2 Daniel on Negotiable Instruments, sections 1527–1531; 1 Dillon on Municipal Corporations, second edition, section 371; Id., sections 314, 315, 432; Taylor on Private Corporations, sections 120–125, and notes; Wood's Field on Corporations, section 221, and notes; Waterman on Specific Performance, section 220; Ketchum v. City, etc., 14 New York, 364; Smith v. City of Newbern, 70 North Carolina, 19; Mills v. Gleason, 11 Wisconsin, 493; Mullarky v. Cedar Falls, 19 Iowa, 21; Black et al. v. Cohen, 52 Georgia, 621; Sheffield School Township v. Andress, 56 Indiana, 157; Clarke v. School District, 3 Rhode Island, 199; Vandall v. S. S. F. Dock Company, 40 California, 83; The State v. Council, etc., of Hammonton (9 Vroom, 430), 38 New Jersey Law, 430.

That the town of Waxahachie, having the power to purchase the property, and to contract a debt therefor, had the power to issue bonds to the vendors in payment of the debt, he cited City of Galveston v. Loonie, 54 Texas, 517; Hitchcock v. Galveston, 96 United States, 341; White Water Valley Canal Company v. Vallette, 21 Howard, 419; Seybert v. Pittsburg, 1 Wallace, 272; Rogers v. Burlington, 3 Wallace, 666, 667; 21 Daniel on Negotiable Instruments, sections 1527–1531; 1 Dillon on Municipal Corporations, second edition, sections 407, 81–83; City of Williamsport v. Commonwealth, 84 Pennsylvania State, 487; Commonwealth v. Pittsburg, 41 Pennsylvania State, 279; Bridgeport v. Railroad Company, 15 Connecticut, 475–501; City of Galena v. Corwith, 48 Illinois, 423; Burr v. Carbondale, 76 Illinois, 474; Keely v. Mayor, 4 Hill, 263; Ketchum v. City, 14 New York, 364; Peterson v. Mayor, 17 New York, 452; Smith v. Newbern, 70 North Carolina, 19; Bank v. Chillicothe, 7 Ohio, 354; Mills v. Gleason, 11 Wisconsin, 493; Douglas v. Mayor, 5 Nevada, 147; First Municipality of New Orleans v. McDonough, 2 Robinson (La.), 244, 2150, 2151; Sheffield School Township v. Andress, 56 Indiana, 157; Clarke v. School District, 3 Rhode Island, 199.

That the city of Waxahachie has succeeded to the obligations of its predecessor, the town, and, under the express power given

in the General Incorporation Act, which it has adopted, it can issue the bonds as stipulated in the contract, he cited Revised Statutes, Articles 419, 420; Waterman on Specific Performance of Contracts, section 126.

That the railway bonds were not issued for any municipal purpose, and the taxation for their liquidation is beyond the control of the city by the terms of the Act, he cited Revised Statutes, Article 420; Special Laws, 1875; Detroit v. Detroit, etc., Plank Road Company, 12 Michigan, 333; City of Galveston v. Loonie, 54 Texas, 517; Hitchcock v. Galveston, 96 United States, 341.

In this case able printed arguments were filed by counsel on both sides.

GAINES, ASSOCIATE JUSTICE. The leading question in this case is, did the town of Waxahachie, at the time the contract here sought to be enforced was entered into, have the power to create an indebtedness for the purchase of a school house, and to issue bonds therefor. The corporation was then organized and performing its functions under a charter granted by a special act of the legislature, passed April 28, 1871. The sections of this act which define the powers of the town, and of its board of aldermen, are as follows:

"Section 1. Be it enacted by the legislature of the State of Texas, that the citizens of the town of Waxahachie, in Ellis county, be and they are hereby declared a body corporate and politic, and under the style of the 'Town of Waxahachie,' may sue and be sued in all courts and suits whatever, and may purchase, hold and convey any real or personal estate within the limits of said town, and may have a corporate seal.

"Sec. 13. That the mayor and aldermen shall have the power to enact such by-laws and ordinances for the government of said corporation, and for the quiet, peace, good order and happiness of the citizens of the same, not inconsistent with the laws of the State, as may be deemed proper; and may impose fines and penalties for the violation of the same, and not to exceed one hundred dollars in any one case.

"Sec. 14. That the mayor and aldermen shall have and exercise control over the public square, streets, sidewalks and roads within said corporation.

"Sec. 15. That the board of aldermen shall have the power to levy and provide for the collection of an ad valorem tax on prop-

erty situated in said corporation, taxable by the general law of the State; and also the power to levy and collect a poll tax, not to exceed one dollar each, on all male persons of said corporation over the age of twenty-one years, which tax shall be collected in such manner as may be provided by the by-laws of said corporation; provided, said ad valorem tax shall not exceed one half of one per centum on the value of the property taxed, and that it shall require the vote of two-thirds of the members of the board of aldermen to levy such tax, and the same shall be done at a regular meeting of the board.

"Sec. 16. That the board of aldermen shall have the power to license, tax, and regulate hawkers, peddlers, auctions, theatricals and other exhibitions, shows and amusements, billiard tables, nine and ten pin alleys, groceries, tippling houses, and dram shops, and to determine the amount of tax upon the same, and to suppress gaming or gambling houses, by whatever description known, and all disorderly houses."

We do not understand it to be seriously claimed that the authority to make the contract in question is derived from these provisions. But in 1884 the town, by a vote of the people, availed itself of the right granted by the Act of April 3, 1879 (Laws Sixteenth Leg., p. 76), and took exclusive control of the public schools within its limits. Subsequent to this action, and in the same year, the agreement for the purchase of the school property and building then belonging to appellees was made between them and the school trustees, and was ratified by an ordinance duly passed by the board of aldermen of the town. Now it is contended that after having assumed control of its public schools, the town of Waxahachie had power not only to purchase building sites and to construct school houses, and hence to purchase a site with a building already erected, but also to create a debt and to issue bonds in consummation of the transaction.

The provision of the law from which it is claimed that this authority is derived is as follows: "The council or board of aldermen of any such city or town * * * * * are furthermore authorized to pass such ordinances, rules and regulations, not inconsistent with the Constitution and laws, as may be necessary to establish and maintain free schools, purchase building sites, construct school houses, and generally to promote free public education within the limits of their respective cities or towns." (Rev. Stats., art. 3783.)

Construing this enactment, this court held, in Dwyer v. Hack-

worth, 57 Texas, 245, that when a town or city had voted to take charge of its free schools, school houses within the city became public buildings within the meaning of the law, which provided for a tax of one-fourth of one per cent for the erection of public buildings. That suit was brought to enjoin the collection of certain taxes levied by the city council of the city of Brenham, which was incorporated under a special charter authorizing a levy of a tax for public buildings and also an issue of bonds for general purposes to a limited amount.

The only proposition deducible from that decision which assists us in the determination of the present case is, that if a town or city has assumed control of its public schools and has the power to levy a tax for the erection of public buildings generally, a levy for the purpose of building school houses is valid.

The statutes relating to the management of free schools by towns and cities authorizes a special tax for their support by a vote of the tax payers, but does not authorize such tax specifically for school houses; and section 9 of article 8 of the Constitution as amended would seem merely intended as a limitation of the extent of taxation, and in itself not a self-executing grant of power. It may be seriously doubted, therefore, whether the town of Waxahachie, and other towns with like charters, had any authority to levy a tax for this purpose. But if the town had the power to create a bonded indebtedness, it might be made chargable upon its general funds. Therefore, the question is not necessarily involved in the determination of this case, and we do not feel called upon to decide it.

Article 420 of the Revised Statutes confers authority upon cities organized under the general laws to purchase sites and erect public buildings, and to issue bonds for that purpose. Similar provisions may doubtless be found in the special charters of other cities in the State; but no such power is given to towns under the general laws, and it may be doubted whether such power has been given to any town by special charter. The question therefore recurs, does the provision in Article 3783 of the Revised Statutes (which we have quoted), in the absence of an express statutory provision conferring the power to create debts, authorize towns which have taken charge of their free schools to issue bonds for the purchase of school buildings.

In Robertson v. Breedlove, 61 Texas, 316, it was held, in effect, that commissioners courts, though charged with the duty of providing court houses, could not issue bonds for that purpose in the

absence of an express legislative grant, but left it an open question whether a different rule might not apply to municipal corporations proper. The opinion in that case recognizes the conflict between the authorities upon the latter question. A discussion of these authoriries, however, would lead to no profitable result at this time, since in our opinion the provisions of our Constitution and statutes relating to the power of municipal corporations to levy taxes and to create debts are decisive of the point now before us.

Article 11 of the Constitution, in so far as it refers to towns and cities, is principally devoted to a careful restriction upon these powers. As to towns there is no provision indicating any authority to create a debt, nor any to issue bonds, except possibly for the purpose of paying any indebtedness which had accrued up to the time the Constitution went into effect. (Const., Art. 11, sec. 6.) By section 5, the power of annual taxation in cities having over ten thousand inhabitants is limited to two and a half per cent of its taxable property, and the amount of indebtedness authorized to be incurred is correspondingly restrained by the declaration that no debt shall be created "unless at the same time provision be made to assess and collect annually a sufficient tax to pay the interest thereon, and create a sinking fund of at least two per cent thereon." A like restriction is placed upon cities upon the coast in regard to the indebtedness authorized to be contracted for the construction of sea walls, breakwaters, and for sanitary purposes. (Art. 11, sec. 7.) The right of cities and towns having ten thousand inhabitants or less to issue bonds being neither granted nor prohibited, was evidently left to the wisdom of the legislature.

The legislation subsequent to the adoption of the Constitution seems to have pursued regularly the policy of the framers of the organic law. Title 17 of the Revised Statutes relates to the organization, the powers and duties, of cities having over one thousand and not more than ten thousand inhabitants, and of towns containing two hundred and not more than one thousand people. Articles 419 and 420, which apply to cities only, provide that for the purpose of paying and discharging existing indebtedness, and improving public markets and streets, erecting and conducting city hospitals, city hall, water works, and so forth, that the city council shall have the power to borrow money upon the credit of the city, and to issue coupon bonds therefor; but also provide that the aggregate amount of such bonds shall at no time

exceed six per cent of the value of the property within such cities subject to ad valorem tax. Article 421 directs that when any bonds are issued, provision shall be made for taxation to pay the interest and create a sinking fund to redeem them. Articles 423 and 424 further provide that the bonds shall be forwarded to the comptroller of the State, with a statement of the value of the taxable property of the city, and also of the tax levied for the payment of the interest and to create the sinking fund; and it is made the duty of the comptroller to see that a sufficient sum is collected annually to pay such interest and to create the sinking fund. By Article 427 it is also declared in effect that no city shall create any debt without at the same time providing for the payment of the interest and a sinking fund.

There are no such provisions relating to towns organized under the general laws. The difference between the provisions of the title referred to in reference to cities and those relating to towns is remarkable. There are ten chapters devoted to the former, and but one to the latter class of municipal corporations. The powers granted to towns in chapter 11 of that title are hardly more than are absolutely essential to their existence as bodies corporate. No authority to issue bonds or to create debts is given them, and hence there are no enactments regulating the amount or mode of their issue. Looking, then, to the policy of our laws as shown by the constitutional and statutory provisions to which we are referred, is it to be presumed that it was intended by Article 3783 of the Revised Statutes to give to such towns as should assume control of their public schools the right not only to buy building sites and to erect school houses, but also to create a bonded indebtedness in furtherance of that object?

We can not think so. If they can issue bonds at all, we do not see that they are restricted either by the Constitution or the laws as to the amount. The Constitution limits the amount of indebtedness, which a city of over ten thousand inhabitants can create; and the Revised Statutes (which contain the provision we are attempting to construe) very guardedly restrict the powers of cities organized under the general laws in this respect. It is, therefore, reasonable to suppose that the legislature did not intend to confer by implication upon these minor municipalities unlimited authority to create debts for any purpose.

The power to borrow money or to create a debt is not a necessary incident of the power to buy grounds and build school.

houses; and hence should not be implied against the spirit and policy so clearly manifested by contemporaneous legislation as well as by the organic law in force at the time this legislation was enacted.

If the towns organized under the general law did not have this authority, then it can not be claimed for the town of Waxahachie, because its special charter contains no greater powers than those conferred upon the former towns by the Revised Statutes. In fact, the powers given to the one are hardly more or less than those granted to the others. We therefore conclude that the town of Waxahachie did not have the power to make the contract which is sought to be enforced by this suit.

The transaction, however, occurred in 1884, and in 1885 the town availed itself of the provisions of the Revised Statutes and became incorporated under the general law as the city of Waxahachie; and it may be claimed that, if the city is authorized to make such a contract, it is legally bound to carry into effect the original agreement, although it was not binding upon its predecessor, the town.

As a legal proposition, this admits of serious doubt. As a matter of fact, however, it appears by the finding of the court that, at the time the suit was brought, the town had outstanding a bonded indebtedness (created under a special act of the legislature in order to aid in the construction of a railroad) of forty-eight thousand one hundred dollars. Its taxable values, by the last assessment before the trial, was nine hundred and thirty-nine thousand eight hundred and eight dollars. The city had in its treasury the sum of eight hundred dollars, which could be lawfully applied to the payment of these bonds only. If the entire sum of these debentures is to be estimated, in calculating the amount of bonds authorized to be issued by the city under the last proviso in Article 420 of the Revised Statutes, then the nine thousand dollars of bonds stipulated for in the contract make an indebtedness in excess of the limits therein prescribed, and in no event is their issue authorized by law.

But it is contended that the railroad bonds are not to be counted, and we are referred to Hitchcock v. Galveston, 96 United States, 341, and Galveston v. Loonie, 54 Texas, 517, in support of this argument. The decisions, however, in these cases are merely to the effect that the provision in the charter of that city that it should not borrow over fifty thousand dollars for general purposes did not prohibit it from incurring an indebtedness ex-

ceeding that amount for the construction of sidewalks. The courts hold that this latter was not a general, but a special, purpose. But Article 419 of the Revised Statutes authorizes bonds for funding all existing or future debts of the cities to which it applies, and specially directs the issue of bonds to pay railroad subsidies legally voted. Article 420 authorizes an appropriation of the funds of the city for the purpose of paying all accrued indebtedness, and of improving Market street, building city hall, etc.; and empowers the council to issue bonds "in furtherance of these objects," clearly embracing, we think, every species of obligation lawfully accrued and to accrue—that is to say, railroad bonds as well as all other debts of every character having a long time to run.

The proviso limiting the amount of bonds to be issued to six per cent of the value of the taxable property of the cities immediately follows, and does not except those issued to railroad companies. We think, therefore, the intention of the legislature was to include within the limitation every character of bonded indebtedness.

But it is also urged that the eight hundred dollars in the treasury applicable only to the railroad bonds of the city should be deducted from their amount in making the calculation. But the money in the treasury did not actually reduce the amount of the bonds outstanding, and we do not feel warranted in holding that the means to pay in part with money that could be lawfully applied to no other purpose was equivalent to a payment. It is to be presumed that the eight hundred dollars was to meet the interest or to go to the sinking fund and was not immediately applicable to the payment of the debts.

Besides it is to be noted that in the transaction the town was to assume the payment of an indebtedness for six thousand dollars secured by promissory notes, having several years to run, with interest payable semi-annually and secured by a mortgage upon the property; and it is a serious question whether this should not also be included in making the estimate. If not, it would seem that the statutes which have so jealously guarded the interests of tax payers in these cities would admit of an easy evasion. We conclude, therefore, that the city of Waxahachie could not have made this contract.

This relieves us of the necessity of passing upon another point which has suggested itself to us, which is as to the effect of the possession and use of the property by the corporation after it be-

came a city.  If it had not the power to make the original contract, it had not the power to ratify it.

But it is claimed that if the town of Waxahachie had not the power to issue bonds, yet it had the authority to contract a debt for the purpose of purchasing a school house; and, therefore, if the city council can not be compelled to issue the bonds, a judgment should be rendered against the city for the debt, and enforcing the vendor's lien upon the property.  But the policy of our laws seems to be to restrict municipal corporations as to the creation of debts, and not merely as to the issue of bonds.  The rate of taxation, both ordinary and special, being limited by the constitution and laws, it follows that if an indebtedness proposed to be created, largely exceed the annual tax for one year, adequate provision could not be made for its payment unless the obligations should run for a series of years.  Article 427 of the Revised Statutes, already referred to, evidently contemplates that in every such case bonds shall issue, and a corresponding tax shall be levied to provide for their payment.

It would seem, therefore, that no debt can be created when bonds could not issue, except such as could reasonably be met by current taxation, within a reasonable period of time.  It is to be remarked that at one time during the negotiation which took place between the parties with reference to the contract in question, it was contemplated that the bonds to be issued should be made chargeable upon the tax which had been voted for school purposes.  The question presents itself whether this could be deemed adequate provision for the payment of the bonds, since the power to levy this tax was subject to be withdrawn by a vote of the tax-payers of the city.  (See Laws Seventeenth Legislature, page 64.)

But we need not enter upon a discussion of this question.  It follows, from what we have already said that in our opinion the contract sued upon can not be enforced against the city, either according to its terms or by a judgment against the city for the purchase money agreed upon for the property.  The judgment will accordingly be reversed, and since we have not the data in the record from which to make a complete adjustment of the equities between the parties, the cause will be remanded for that purpose.  The plaintiffs below should be decreed to have the title and possession of the property attempted to be sold, and should have a judgment against the city for the reasonable value of its use and occupation, less the enhancement in its value at the time

of the trial by reason of any permanent improvement placed thereon by the city.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered March 22, 1887.