No. 2584.

THE CITY OF TERRELL *v.* L. C. DESSAINT.

1. CONSTITUTION CONSTRUED.—Construing sections 5 and 7 of article 11 of the State Constitution, which prohibits the creation of a debt by a city unless provision be made at the time to assess and collect annually money to pay interest and create a sinking fund, apply to all cities alike without regard to the number of their inhabitants.

2. SAME. — Debts for the ordinary running expenses of a city, payable within a year out of the incoming revenues, do not come within the meaning of the constitutional inhibition above referred to; but a debt created for materials to improve municipal properties, which is to be paid with interest at one and two years after the debt is contracted, would be a debt within the meaning of sections 5 and 7 of article 11 of the Constitution.

3. SAME.—Any debt created by a city government which can not be discharged from the revenues of the current year, and which matures at a period which would make it a charge upon the city revenues for future years, is a debt within the meaning of sections 5 and 7 of article 11 of the Constitution.

APPEAL from Kaufman. Tried below before the Hon. Anson Rainey.

*Terrell & Galbraith* and *Word & Charlton,* for appellant: The note sued on having been executed in consideration of the recission of a lease or sale contract of the water works by the city to the Texas Gas and Water Works Company, and of certain material owned by said company, and which was not needed by the city to meet any present city purpose or demand, and which could in the main be used only in extending

the system of water works owned by the city, was not in fact or law a debt contracted to meet or defray the current expenses of the city. (Taylor v. Davis, 110 U. S., 330; Cooley on Tax., 2 ed., 113–118; Desty on Tax., 1064, 1066, 1069, 1071; 25 Kan., 357; 21 Kan., 317, 318.)

The debt covered by the note sued on not having been contracted in payment of the actual running expenses of the city, is not for current expenses.

No provision having been made by the city for the payment of the note sued on, same is void. (Rev. Stats., arts. 421, 427; Waxahachie v. Brown, 67 Texas, 531; Gould v. Paris, 68 Texas, 514; New Orleans v. Clark, 95 U. S., 652.)

The city having contracted a bonded indebtedness in excess of six per centum of the value of all property in the city subject to an ad valorem tax prior to the date when the note sued on was executed, its power was then exhausted, and such note, without authority, *ultra vires* and void.

At date of executing the note sued on the city had an outstanding and unpaid bonded indebtedness in excess of six per centum of the value of all property in the city subject to an ad valorem tax. The city had a bonded debt, at that time, of sixty-two thousand dollars. Its taxable property, at that time, was of the value of nine hundred and twenty-five thousand dollars. All such property now in the city is of the value of eight hundred and eighty-six thousand dollars. (Constitutional Amendment of 1883, arts. 420, 427, R. C. S.; Gould v. Paris, 68 Texas, 514; Waxahachie v. Brown, 67 Texas, 531; New Orleans v. Clark, 95 U. S., 562; Dixon County v. Field, 111 U. S., 85; Desty on Taxation, 1069–1071.)

*Stirman & Angel* and *Allen & Vesey,* for appellee: The management, control, regulation and extension of the water works of the city is made the duty of the city council; and the note sued on having been given for the rescission of an unsatisfactory lease or sale of said water works, and for material and tools for same, was given for an incidental and necessary expenditure connected with and growing out of such water works, and the court below correctly found such expenditure to be the current expenses of the city. (R. S., arts. 374, 419, 420; 1 Dillon on Mun. Corp., sec. 146.)

The note sued on was given for current expenses, and was payable out of the general fund of the city, and no special

provision or tax was necessary for its payment. (Corpus Christi v. Woessner, 58 Texas, 462; Gould v. Paris, 68 Texas, 514; Quinney v. Jackson, 113 U. S., 332.)

The note recites on its face that it is to be paid out of the general fund, and the city is estopped from denying this, especially after the note has passed into the hands of the appellee. (Mercer County v. Hackett, 68 U. S., 548.)

The obligation sued on not being a bond, but a promissory note, payable in two years after date, and given for expenses incurred in managing the city water works, is not subject to the limitation imposed by law upon the issuance of coupon bonds, and is not affected by the fact that prior to its execution the city may have incurred a bonded indebtedness equal to or in excess of six per cent of its taxable values. (Rev. Stats., art. 420.)

GAINES, ASSOCIATE JUSTICE.    This suit was brought by appellee as endorser of a promissory note of which the following is a copy: "$1,000.    Two years after date the city of Terrell promises to pay P. H. Layen or order one thousand dollars for value received, with interest at 7 per cent. from date.    This note is given in payment for material for water-works supplies, and is payable out of the tax of $\frac{1}{4}$ of one per cent. collected annually for general purposes."    It is dated May 13, 1885, and is signed by the mayor and secretary pro tem of the city.    At the time of the execution of the note the city had leased or sold its water-works to the Texas Gas and Water Company and the latter had been in possession of the property for a considerable time.    The management of the company not being satisfactory, it was agreed that its contract with the city should be rescinded and that the city should resume the possession and management of the works.    As a part of the contract of rescission, the city agreed to purchase of the company certain materials on hand for the extension of the works, and to pay therefor the sum of two thousand dollars.    For this sum the city issued warrants or drafts on its treasurer for about five hundred dollars, and executed two promissory notes—one being that in controversy—and the other for five hundred dollars, payable twelve months from date.

Among other findings, the court found as a matter of fact that the note was given for current expenses, and as a matter of law, in effect that it was created in accordance with law, and gave judgment accordingly.

Section 5 of article 11 of our Constitution provides that "no debt shall ever at any time be created by any city, unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and to create a sinking fund of at least two per cent thereon." Section 7 of the same article contains this still more emphatic declaration: "But no debt for any purpose shall ever be incurred in any manner by any city or county, unless provision is made at the time of creating the same for levying and collecting a sufficient tax to pay the interest thereon and to provide at least two per cent as a sinking fund."

In Corpus Christi v. Woessner, 58 Texas, 462, it was intimated that there might be a question, whether the provisions quoted applied to cities other than such as have more than ten thousand inhabitants; but the determination of the point was not necessary to the decision of that case, and it was not decided. The question is presented in the case before us, and we are of opinion that they must be held to apply to all cities alike. It is true that section 5 relates mainly to cities having more than ten thousand inhabitants, and provides that they may be chartered by special acts of the legislature, and fixes the limits of their taxing power. Section 7 also relates in the first place to counties and cities upon the sea coast, and authorizes them to levy and collect taxes for the construction of sea walls, break waters and sanitary purposes, and to create debts for these objects. But the provisions we have quoted contain no word or words which restrict their application to the cities previously mentioned in the same section. The language is general and unqualified, and we find nothing in the context to indicate that the framers of the Constitution did not mean precisely what is said; that is, that no city should create any debt without providing, by taxation, for the payment of the sinking fund and interest.

At the time the Constitution was framed the history of the country and of the State afforded examples of municipal corporations which had become bankrupt through the reckless and extravagant management of their governing bodies, and its framers doubtless had under consideration the evils which result, both to the tax payers and the creditors of such corporations, from an unlimited power to create debts. From article 8, on taxation, and article 11, on municipal corporations, they seem to have kept prominently in view two objects—the one

to protect the inhabitants of municipalities against oppressive taxation; the other to protect the creditors and to preserve the financial honor of such corporations. The first was sought to be accomplished by section 9 of article 8 (since amended in pursuance of its original policy and spirit), which fixes the limit of taxation and defines the purposes for which taxes may be assessed. The second was intended to be attained by the section last named in connection with the provisions quoted from sections 5 and 7 of article 11, which limit the power of creating debts by making it proportionate to the power of taxation. Such being, as it seems to us, the evident purpose of the framers of the Constitution, we have no doubt that, although a specified class of cities had been previously mentioned in each of the sections from which we have quoted, when they said that no city should create any debt without providing for the payment of the interest and sinking fund thereon, they meant that the words should be construed according to their literal import, and not to restrict them to the class of cities which had been formerly mentioned in the same section.

But it is contended that the promissory note sued upon in this case is not a debt, within the meaning of the provisions of the Constitution which limit the power of cities to create indebtedness, and the statutes which regulate the manner in which such debts shall be evidenced and secured. To state appellee's position more specifically—it is claimed that the debt in this case was current expenses, and being chargeable upon the current expense fund, it does not come within the purview of the provisions of the Constitution and the statutes to which we have referred. It is held in the case previously cited (Corpus Christi v. Woessner), that "the issue of warrants on current expenses of a city, which do not exceed the current revenue derived from taxation" is not the creation of a debt prohibited by the Constitution. We do not doubt the correctness of that ruling. We freely concede that debts for the ordinary running expenses of a city, payable within a year out of the incoming revenues of the year, and with other indebtedness not clearly in excess of the yearly income for general purposes, can be created by a city. But we think that a debt for current expenses in order to be valid without a compliance with the constitutional and statutory requirements to which we have referred, must run concurrently with the cur-

rent resources for such purposes, and that such a debt can not be created without such compliance, which matures at such a time as would make it a charge upon the future resources of the city. It may not be easy to define accurately what are the current expenses of a municipality. But we may ask, if a city can create a debt of one thousand five hundred dollars for materials to extend its waterworks, and make it payable with interest one and two years after date, why may it not create an indebtedness for a larger sum for any public improvement, which it has the power to construct, and make it payable at a longer period? It is clear to us, that if this were permitted the provisions of our Constitution and statutes, which limit the power and regulate the manner of the creation of municipal indebtedness would be entirely nugatory.

It was shown upon the trial that the city had exhausted its powers of creating debts chargeable upon funds to be raised by special taxation when the note sued on was given. It was also shown that at the time, and ever since, the current expenses proper of the city exceeded its resources for general purposes. We state these facts, not because we think their statement necessary to a decision of this cause, but because they serve to illustrate the doctrine we assert. If an indebtedness of this character is to be permitted to be created in this manner, of what avail is the provisions of our fundamental and statutory laws, which are intended to protect our cities against the evils of a bankrupt treasury?

We are clearly of opinion that the city of Terrell exceeded its powers in creating the debt in controversy; and the judgment will accordingly be reversed, and here rendered for appellant.

*Reversed and rendered.*

Opinion delivered November 16, 1888.