**GRIFFITH v. SOWELL et al.   (No. 387.)**

(Court of Civil Appeals of Texas. Waco. July 1, 1926.   Rehearing Denied Nov. 4, 1926.)

**1. Municipal corporations ☞863.**

Provisions of charter conferring power on board of water commissioners to purchase machinery for water plant and to dispose of revenues derived from its operation should be strictly construed.

**2. Municipal corporations ☞868(2)—Charter conferring authority on board of water commissioners to maintain water plant held not to confer authority to create debt payable in succeeding years.**

City charter authorizing board of water commissioners to finance maintenance and extension of water plant *held* not to confer express authority to create a debt payable in succeeding years or to anticipate current revenue for such years, and no such authority is necessarily implied from power to maintain plant.

**3. Municipal corporations ☞868(2)—Authority by board of water commissioners to create debt payable in succeeding years will not be implied, if not intended.**

Authority by board of water commissioners to create a debt payable in succeeding years or to anticipate current revenues of such years will not be implied, if charter, as a whole, shows that such authority was not intended or that provision for maintenance of water plant was made in some other way.

**4. Municipal corporations ☞868(2).**

Purchase price of machinery for municipal water plant to be paid for in part out of revenues expected in succeeding year is "debt," within Const. art. 11, §§ 5, 7, prohibiting creation of debt unless taxes are provided for payment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

**5. Municipal corporations ☞868(2)—Purchase of machinery for water plant held "current expense," under city charter providing for payment of expenses of maintenance and extension before surplus was set aside.**

Under charter providing for payment of expenses of maintenance and extension of water system payment before any surplus was set aside for emergencies and applied to sinking fund, purchase of machinery for plant was a "current expense" of year in which it was purchased.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Current Expenses.]

**6. Municipal corporations ☞868(2)—Board of water commissioners has no implied authority to purchase machinery for water plant and pay therefor in part by revenue derived from succeeding years (Rev. St. 1925, art. 1175, subd. 11).**

Under city charter conferring on city council powers to pledge revenue of water plant, in accordance with Rev. St. 1925, art. 1175, subd. 11, board of water commissioners has no implied authority to purchase machinery for operation and extension of water plant and pay therefor in part by revenues derived in succeeding years.

Appeal from District Court, Johnson County; Irwin T. Ward, Judge.

Suit by W. H. Griffith against D. S. Sowell and others, composing the Board of Water Commissioners, and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Goree, Odell & Allen, of Fort Worth, for appellant.

E. A. Rice, of Cleburne, and Lee, Lomax & Wren, of Fort Worth, for appellees.

GALLAGHER, C. J. This suit was instituted by appellant, W. H. Griffith, a resident property tax payer of the city of Cleburne, against appellees D. S. Sowell and others, composing the board of water commissioners of said city, and A. M. Lockett & Co., Limited, a corporation, to restrain the execution and performance of a contract made on December 1, 1924, by said board of water commissioners with said A. M. Lockett & Co., Limited, for the purchase of certain waterworks machinery for the waterworks plant of said city. Said city of Cleburne, its mayor, and the members of its city council were made parties defendant and are appellees herein. The contract sought to be enjoined, as originally entered into, provided for the purchase of said machinery for the sum of $49,788, payable as follows: $5,000 on January 5, 1925; $10,000 upon delivery of the machinery; and the balance in 14 notes, 13 of the same being for the sum of $2,500 each and one for $2,208, the first of which was to be due 30 days after the erection of the machinery, and one every 30 days thereafter until the last was paid. The parties to said contract estimated at the time that it would take at least five months to manufacture, ship, and install said machinery, which would have made the first note mature not earlier than July 1, 1925, and the last one August 1, 1926, making the last 8 of said notes, aggregating $19,888, mature more than one year after the final execution of the contract. In addition to the contract price of the machinery, the board of water commissioners were to pay freight charges and cost of installation, estimated at the aggregate sum of $6,000. Said contract provided that all indebtedness arising thereunder, whether evidenced by notes or not, should be payable at New Orleans, and that deferred payments should bear interest at 6 per cent. per annum from date of shipment and should be a first lien on said property until said debt was paid. Said contract further provided that said Lockett & Co. did not relinquish their title to said property until it was fully paid for, and that, in case of default, said Lockett & Co. might declare the whole amount re-

maining unpaid then due and payable and without process of law take possession of said property, remove the same from the premises, and sell the same as under execution for the purpose of satisfying their demands. It further provided that the board of water commissioners should keep said property insured, with the loss, if any, payable to Lockett & Co. as its interests might appear. Said contract was registered as a chattel mortgage in the office of the county clerk of Johnson county on January 15, 1925.

Appellant instituted this suit on the 14th day of February, 1925. On March 24, 1925, the court granted a temporary injunction restraining appellees from proceeding further in performance of said contract, but, appellant having failed to make the bond required, the order granting said injunction was set aside and vacated.

Said original contract for the purchase of said machinery was modified by a supplemental contract in writing, dated May 15, 1925. By the terms of said supplemental contract, the board of water commissioners agreed, in substance, that all funds, including bonds or claims or bills receivable theretofore accumulated and the net receipts and revenues thereafter to be derived by said water department by operation of its waterworks system, over and above the necessary expense of operating the same, should be and were set aside and constituted a fund to be used solely for paying off and discharging its obligations, under its said original contract, and the notes to be executed thereunder until said obligations were fully satisfied, and declared that such funds and net receipts and revenues were there pledged to secure its said obligations. In consideration thereof, said Lockett & Co. agreed to relinquish and waive all claims or demands they had or might have ever asserted against any other revenues or income from any source whatsoever of the city of Cleburne, other than the revenues from the waterworks system as aforesaid. It was expressly provided in said supplemental contract that nothing therein should be taken as changing or modifying the original contract except as therein expressly stated, nor as a waiver on the part of Lockett & Co. of any lien, right, or remedy under said contract other than such as were expressly waived as above stated.

There was a trial to the court on May 31, 1925. The evidence shows that the city of Cleburne was operated under a home rule charter, adopted September 17, 1914; that said city had shortly theretofore acquired a waterworks plant; that it paid for the same with the proceeds of a bond issue in the sum of $128,000; that it, at the same time, improved and equipped said plant with the proceeds of a bond issue in the further sum of $50,000; and that all said bonds were outstanding at the time of trial. A copy of said charter was made a part of the statement of facts, and its applicable provisions will be hereinafter recited and discussed. The court rendered a final judgment denying appellant any relief, and he here presents said judgment for review.

### Opinion.

Appellant presents several interesting questions for determination. We do not think it necessary to consider all of them. The first question presented is appellant's contention that the board of water commissioners were without lawful power or authority to execute said contract, and also without power or authority to pledge the revenues arising from the operation of said water plant for the payment of the obligations assumed therein.

The charter of the city of Cleburne provides for the creation of said board of water commissioners and the election of its members, and declares that such members shall be officers of said city. The principal provisions of said charter defining the duties of said board of water commissioners, and conferring authority upon them to perform the same, are contained in the following sections:

"Section 79. It shall be the duty of said board of water commissioners to take charge of, manage, maintain, operate, improve, extend, and enlarge the system of waterworks, its water supply and facilities, either in or outside of the limits of the city of Cleburne, fix water rates for consumers and users of water, and to establish and enforce such rules, regulations, charges, and restrictions with reference to the use, consumption, waste, payment, cut off, turn on, connection, and the general and detailed management of said plant and connections of any kind or character, as they may deem proper, expedient, and necessary and which are not inconsistent herewith. It shall be their further duty to fix, establish, change, and adjust the rates in such manner as shall seem to them to be equitable, fair, and just, and the same shall in no wise be disturbed by any other authority, except for fraud or gross injustice: Provided, that the rates for domestic purposes shall never be increased above the present rates, except by majority vote of the qualified voters of the city participating in an election, which said election shall be ordered by the council when requested by a majority of the board of water commissioners.

"Said department of the municipal government of the city of Cleburne, herein provided for, shall be known as the water department. It shall keep balanced accounts with the other departments of the city of Cleburne. It shall furnish said city water for sprinkling and fire protection and charge therefor at a rate which shall be reasonable, considering the cost of supplying the water and keeping and maintaining the plant; water required for all other purposes for the city government shall be furnished free by the said water department; and in order to furnish and supply the city with water for the above-mentioned purposes, the said water department shall arrange and provide such reasonable facilities as may be necessary for the meeting of these demands. * * *

"Sec. 83. All funds collected by or on be-

half of the water department shall forthwith be delivered by the person collecting the same to the superintendent, and he shall daily deposit all funds coming into his hands with the treasurer of the city of Cleburne as the funds of the city, and the same shall be credited by the treasurer to the 'waterworks fund' and shall not be drawn upon or expended, except as herein provided. All payments of money by said water department shall be made by the board of water commissioners by draft or check on said fund which shall, in addition to the other formalities, state accurately and specifically the purpose for which it is given, and shall be signed by the superintendent and attested by the president and the secretary of the board; and said fund shall not be drawn upon in any other manner and said officers shall not sign or attest any warrant, draft, or check unless they personally know the same to be drawn for the purpose specified. After the payment of the expenses of maintenance and extensions of the water system, the board of water commissioners shall annually set aside the surplus until $10,000 has been accumulated in a fund known as the 'waterworks sacred fund,' which shall not be used except in the case of emergencies, but which may be invested under the terms of this charter. When said fund amounts to $10,000, then the board of water commissioners, for the purpose of reducing taxes, may appropriate said surplus, after the payment of all expenses of maintenance and extension, to the payment of interest on bonds of the city and to sinking funds. Receipts and funds of the water department shall not be used or applied to any purpose except such as is authorized by this charter.

"Sec. 84. The board of water commissioners shall have power to borrow money for the current expenses of the water system in any sum or sums as the board may deem proper, not to exceed $10,000 in the aggregate, and to issue board's negotiable note or notes for same, to be signed by the president and attested by the secretary. Such loans shall not bear a higher rate of interest than 8 per cent. per annum or run longer than the current year and shall not be sold or negotiated for less than par."

[1] We may concede that the said charter provisions confer upon the board of water commissioners as an agency of the city, by implication, the power to contract for the purchase of suitable and necessary machinery for the continued operation of the plant and to pay for same out of any funds in its hands lawfully applicable to such purpose. Still, such board is not the city nor invested with the general powers of a municipal corporation. It is a mere agency employed by the city to perform a designated part of its municipal functions. The water plant placed in its hands was the property of the city and the revenues arising from the operation thereof were required to be deposited with the city treasurer, as the funds of the city. It derived all its power over such funds from said provisions of the charter, and, in determining the extent of such power, we think such provisions should be strictly construed. The machinery purchased by said contract was for the purpose of replacing a worn-out unit of said water plant, and we may further concede that such replacement was necessary in order to properly maintain said plant, which the charter required the board to do. State v. C., M. & St. P. Ry. Co., 164 Wis. 304, 159 N. W. 919, 921. We may also concede that the cost of said machinery was sufficient to constitute an unusual expenditure and the necessity for its purchase sufficiently imperative to create an emergency. Although it was the duty of the board to maintain said plant by replacing worn-out machinery, its power to perform such duty and the manner of exercising the same were limited by said provisions of the charter.

[2, 3] Nothing contained in said provisions can be construed to confer express authority to create a debt payable in whole or in part, in a succeeding year or years, or to anticipate the current revenues of such year or years as a means of discharging the same or to pledge such revenues for such purpose. No such authority is necessarily implied from the duty imposed and the power given to maintain the plant. Foster v. City of Waco, 113 Tex. 352, 356, 255 S. W. 1104; Robertson v. Breedlove, 61 Tex. 316, 323; Waxahachie v. Brown, 67 Tex. 519, 528, 529, 4 S. W. 207; Claiborne County v. Brooks, 111 U. S. 400, 406, 407, 4 S. Ct. 489, 28 L. Ed. 470. Nor will such authority be implied if it appears from a consideration of said provisions, together with other provisions of the charter as a whole, interpreted in the light of constitutional restrictions, that such authority was not intended to be conferred or that provision for the maintenance of the plant in some other way was made. Foster v. City of Waco, supra.

The Constitution of this state, in article 11, §§ 5, 7, provides that:

"No debt shall ever be created by any city unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least two per cent. thereof," and that "No debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay interest thereon and provide at least two per cent. as a sinking fund."

Our Supreme Court, in McNeal v. City of Waco, 89 Tex. 83, 88, 33 S. W. 322, 324, has defined the word "debt," as used in said constitutional provisions, as follows:

"We concluded that the word 'debt,' as used in the constitutional provisions above quoted, means any pecuniary obligation imposed by contract, except such as were at the date of the contract, within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year or out of some fund then within the immediate control of the corporation. Corpus Christi v. Woessner, 58 Tex. 465; Terrell v. Dessaint, 71 Tex. [770] 777 [9 S. W. 593]; Appeal of City of Erie, 91

Pa. 398; Prince v. City of Quincy, 105 Ill. 138 [44 Am. Rep. 785]."

The court, in the opinion in said cause (page 87 [33 S. W. 323]), declares:

"On the other hand, an obligation binding the city to pay for a matter relating to its ordinary expenses, such payment being, in contemplation of the parties, not intended to be made out of the current funds of the year in which the expenditure is made or any funds on hand lawfully applicable thereto, would be a debt within the meaning of the Constitution. * * * Prima facie every pecuniary obligation attempted to be created by contract is a debt within the meaning of the constitutional provisions above, and a party attempting to recover against the city thereon must allege the facts showing a compliance with the Constitution and statutes necessary to bind the city, or must allege such facts as bring the particular claim within the exception above stated in the definition of the word 'debt.' "

[4] So in this case, even if the purchase price of said machinery in question should be considered an ordinary expense incident to the operation and maintenance of the plant, since payment was not in contemplation of the parties to be made wholly out of funds on hand and current revenues accruing during the year 1925, in which such purchase was made, but in part out of the current revenues expected to accrue during the year 1926, such purchase price must be considered a debt, within the meaning of said constitutional provisions. McNeal v. City of Waco, supra; City of Terrell v. Dessaint, 71 Tex. 770, 774, 775, 9 S. W. 593; Mineralized Rubber Co. v. City of Cleburne, 22 Tex. Civ. App. 621, 56 S. W. 220; City of Tyler v. L. L. Jester & Co. (Tex. Civ. App.) 74 S. W. 359, 364, 366, affirmed 97 Tex. 344, 78 S. W. 1058; Noel v. City of San Antonio, 11 Tex. Civ. App. 580, 33 S. W. 263, 264, 266 (writ refused); Biddle v. Terrell, 82 Tex. 335, 18 S. W. 691; American Roads Machinery Co. v. City of Ballinger (Tex. Civ. App.) 210 S. W. 265, 266, 268 (writ refused); Rogers National Bank v. Marion County (Tex. Civ. App.) 181 S. W. 884, 885, 886 (writ refused); Howard v. Smith, 91 Tex. 8, 38 S. W. 15; J. I. Case Threshing Machine Co. v. Camp County (Tex. Civ. App.) 218 S. W. 1–3.

The charter of the city of Cleburne contains the following provisions:

"No debt shall ever be created by said city unless at the same time provision be made to levy, assess, and collect annually a sufficient sum to pay the interest on said debt and to create a sinking fund of at least two per cent. thereon."

No power to levy a tax is conferred on the board of water commissioners by the charter. So far as its provisions are concerned, the power to create a debt in accord with such constitutional limitations is vested alone in the city council. This fact seems to be recognized by the very terms of said charter, for, while said board is authorized by section 84 thereof above quoted to borrow money, one of the restraints imposed is that the notes evidencing its obligation to repay the same shall not run longer than the current year.

[5] We will next consider whether the charter makes provision for the operation, maintenance, and extension of the water plant without its being necessary for the board of water commissioners to incur a debt, within the meaning of that term as defined by our Supreme Court. In determining this question, we must consider the instrument as a whole and in the light of the situation shown to exist at the time of its adoption. The waterworks system was at that time the property of said city, and it had recently spent $50,000 improving and equipping it. The rates for water service were considered ample to provide for operation, maintenance and necessary extension, and to yield a surplus over and above the necessary expenditures therefor. The board of water commissioners were required to set aside such surplus until the sum of $10,000 had been accumulated and to hold the same as a sacred fund for emergencies. After the accumulated surplus had reached such amount, the board was not required but merely permitted, after paying all expenses for maintenance and extension, to appropriate the remainder of such surplus annually to the payment of interest and sinking fund on the outstanding bonds. The board was in no way prohibited from accumulating and holding in its hands a larger surplus. In addition to the right to accumulate such surplus fund to meet emergencies, said board was also expressly authorized to borrow money in any sum not exceeding $10,000 for current expenses and to issue negotiable notes therefor, subject to the limitation above referred to. The charter expressly provided for the payment of expenses of maintenance and extension before any surplus was set aside for emergencies or applied to interest and sinking fund on the bonded debt. We are of the opinion that maintenance and necessary extension are embraced in the term "current expenses," within the meaning of that expression as used in said charter. Such being the case, the purchase of the machinery in question was a current expense of the year 1925. To meet the emergency of such an increase in the current expense for that particular year, the charter had provided the surplus fund of not less than $10,000, and had conferred power and authority on said board to borrow $10,000 additional on its negotiable promissory notes.

[6] The charter, however, made another and further provision for meeting any such emergency. Section 87 thereof, so far as applicable, reads as follows:

"Provided, however, that in the event the board of water commissioners fails or refuses to perform its duties, or *in the case of emergencies or public necessity,* or at the special instance and request of the board of water commissioners, the city council shall have the pow-

er during the existence of such condition to provide the city with water, or to cause the same to be provided, and * * * to provide that all receipts from said waterworks may, in the discretion of the council, constitute a separate and sacred fund which shall be used for no other purpose than the extention, improvement, maintenance, repair, and betterment of said waterworks or waterworks system, sewer or sewer system, and for the water supply, *and to provide for the pledging of any and all receipts and revenues for the purpose hereinbefore mentioned, and for the payment of the principal and interest, and to provide for the interest and sinking fund for any and all bonds issued therefor under such regulations as it may provide:* Provided, that on the termination of the condition which shall authorize the council to take charge of the waterworks under this section, the same shall at once be restored to the board of water commissioners." (Italics ours.)

Prior to the adoption of said charter, the Legislature had enacted a law authorizing cities, within the Home Rule Amendment to the Constitution, to adopt their own charters by a majority vote of the qualified electors therein, especially enumerating certain powers thereby conferred on cities adopting their charters in that manner. Among the powers so expressly enumerated is a provision authorizing such a city to own and operate a system of waterworks, and—

"to provide that all receipts from the waterworks may, in its discretion, constitute a separate or sacred fund which shall be used for no other purpose than the extension, improvement, operation, maintenance, repair, and betterment of said waterworks system or waterworks supply, *and to provide for the pledging of any such receipts and revenues for the purpose of making any of such improvements,* and the payment of principal and providing an interest and sinking fund for any bonds ·issued therefor under such regulations as may be provided by the charter adopted by such city." (Italics ours.) Subdivision 11, art. 1175, R. S. 1925.

It will be observed that such power is by the terms of the act conferrred on the city and that its exercise is to be regulated by the provisions of its charter. The charter of the city of Cleburne, in language almost identical with the language of said act, does provide for the exercise of such power by the city council in case of an emergency, as shown by the section above quoted, and further authorizes said council to regulate the manner of the exercise of such power. There is nowhere in said charter any intimation of a purpose to confer such power upon the board of water commissioners. The prior valid exercise of such a power by the board of water commissioners would defeat and render nugatory the power expressly granted by the charter to the city council or postpone the exercise thereof indefinitely. Doubtless, the framers of said charter deemed the several provisions

aforesaid ample to provide for the continuous operation, maintenance, and extension of the waterworks plant of said city. We think there can be no reasonable question that, in the aggregate, such provisions are fully sufficient to effect that purpose. Such being the case, they prescribe the manner in which machinery or other supplies necessary for the continued operation, maintenance, and extension of said waterworks system may be purchased and paid for, and exclude any implied authority in the board of water commissioners to purchase and pay therefor in the manner attempted in this case. Foster v. City of Waco, 113 Tex. 352, 354, 356, 255 S. W. 1104; and authorities there cited.

In view of the conclusions above expressed, it is not necessary for us to determine whether the requirement of the Constitution with reference to the creation of debts can be met by a resolution providing for the pledging of anticipated surplus revenue or income to accrue from the operation of said waterworks plant in succeeding years. No provision other than that above recited is claimed to have been made for the payment of said debt. Since we hold that the board of water commissioners which attempted to make such provision had neither express nor implied power to do so, it follows that no lawful provision for such payment has been made.

The judgment of the trial court is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.