

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

June 12, 1947

Hon. M. W. Jones        Opinion No. V-246
County Auditor
Gaines County          Re:  Authority of the
Seminole, Texas             Commissioners' Court
                            to order the issuance
                            of scrip warrants for
                            the payment of claims
                            against the Road and
                            Bridge Fund under the
                            facts presented.

Dear Sir:

      Your request for an opinion from this Department on the above subject matter is as follows:

      "Gaines County's Road and Bridge Revenue is in turn transferred to the funds of the four precincts. When the funds of one precinct are exhausted, does the Commissioners Court have the authority to order the issuance of script warrants in payment of claims against that precinct for services and materials as long as there is a balance to the credit of all of the Class 2 Funds as a whole?"

      In answer to our request for additional information we have received your letter of May 9th which is in part as follows:

      "1.  The 1947 budget appropriated funds amounting to $25,773.70 for the operations of Precinct #4, the precinct in question. Of this amount, more than $16,000.00 has been expended or will be payable by May 31, 1947.

      "2.  The script warrants, if issued, can be redeemed in November, 1947, from money received in the October tax collections. A large portion of our valuations being from oil, we have consistently collected approximately 90% of the taxes

assessed in October.  Of course, this will use up a large portion of the money needed for the 1948 operations of the precinct."

In the case of Austin Bros. v. Montague County, 291 S.W. 628, reversed on other points, 10 S.W. (2d) 718, it was held that where a county had issued warrants for the payment of road machinery and said warrants were not intended to be paid out of current revenues, the warrants were void. We quote from said opinion the following:

"Section 7, Art. 11, of our Constitution, declares, so far as pertinent, that:

"'No debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least 2% as a sinking fund'.

"It seems clear, both by the terms of the warrants and from the testimony of the commissioners, that the sums specified in the warrants were not to be paid out of the current funds of the year of their issuance. This being true, we think there can be no question under the authorities but that the obligation constituted 'a debt' within the meaning of the constitutional provision we have quoted.

"In the case of McNeill v. City of Waco, 89 Tex. 83, 33 S.W. 322, it was said on this subject by our Supreme Court:

"'An obligation binding the city to pay for a matter relating to its ordinary expenses, such payment being, in contemplation of the parties, not intended to be made out of the current funds of the year in which the expenditure is made, or any funds on hand lawfully applicable thereto,

would be a debt, within the meaning of
the Constitution.'

"In the case of City of Terrell v.
Dessaint, 71 Tex. 770, 9 S.W. 593, our
Supreme Court also said on the subject:

"'We freely concede that debts for
the ordinary running expenses of a city,
payable within a year out of the incoming
revenues of the year, and with other in-
debtedness not clearly in excess of the
yearly income for general purposes, can
be created by a city. But we think that
a debt for current expenses in order to
be valid, without a compliance with the
constitutional and statutory requirements
to which we have referred, must run con-
currently with the current resources for
such purposes, and that such a debt can-
not be created without such compliance,
which matures at such a time as would make
it a charge upon the future resources of
the city.'"

Under Article 689a-9-11, V.C.S., the budget
which is prepared in July and adopted in August seems
to be tied to the tax levy made in August for taxes
which are to become due and payable on October 1st.
This is made manifest by that part of Article 689a-11
reading as follows:

"When the budget has been finally
approved by the commissioners' court,
the budget, as approved by the Court
shall be filed with the Clerk of the
County Court and taxes levied only in
accordance therewith, and no expenditure
of the funds of the county shall there-
after be made except in strict compliance
with the budget as adopted by the court."
(Emphasis added)

The budget referred to here is the budget for
the following calendar year. The taxes levied in Au-
gust on the basis of the August budget are taxes which
in contemplation of Article 689a are to be applied to
the expenditures for the following calendar year. This
practice of levying taxes in August for use in the

following calendar year worked well in practice until the Legislature passed Article 7255b, V.C.S., allowing a discount on ad valorem taxes paid in advance. Prior to this law, most of the taxes levied in August were paid in January of the following year, immediately before they became delinquent on February 1st., Article 7336, V.C.S. After enactment of Article 7255b, the bulk of the taxes levied in August are paid in October, November and December following, in order to take advantage of the discount. This, however, does not change the fact that taxes collected in October, November and December 1947 under the 1947 assessment are to be used for 1948 operations.

In view of the foregoing authorities, scrip warrants cannot now be issued that will have to be redeemed out of taxes collected under 1947 assessments for such taxes are revenues for 1948 operations and not current revenues. Under the facts submitted, there has already been expended all but $9,773.70 of the amount appropriated under the 1947 budget for Precinct #4, the precinct in question. It is, therefore, our opinion that scrip warrants up to $9,773.70 may be issued if they are within the reasonably anticipated current revenues for 1947. It is our further opinion that no scrip warrants may be issued that are intended to be paid out of revenues for 1948 or any future year.

## SUMMARY

Scrip warrants on county road and bridge fund may be issued by a county in an amount equal to the difference between the sum of money already expended and the amount appropriated in 1946 for the 1947 budget, provided such warrants are within the reasonably anticipated current revenues for the calendar year 1947.

Taxes collected in October, November and December, 1947, under the 1947 assessment, in a county operating under Art. 689a, V.C.S., are to be used for 1948

operations and are not current revenues for 1947.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By

Fagan Dickson
First Assistant

FD/lh:wb

By  *John Reeves*
John Reeves
Assistant

APPROVED:

*Price Daniel*
ATTORNEY GENERAL