## CITY OF DALLAS V. F. O. BROWN.

### No. 1175.

1. **Debts of Cities—Constitutional Law—City Charter and Ordinances—Street Improvements.**—L. & S. were contractors to grade and pave thirty-seven feet of Pacific avenue under a contract with the city of Dallas. The city engineer staked off forty-one feet, and directed the contractor to construct it. The work was done under the supervision of the city engineer and the street committee of the city council. In a suit brought for the value of the construction of the extra four feet, the defense was, (1) that no valid debt was created for such extra work, because no provision was made by the city for the payment of the debt as provided for by sections 5 and 7, article 11, of the Constitution of the State; (2) that by defendant's charter the costs of such improvements shall be paid by the owners of the property abutting; (3) that the contract was made subject to the defendant's ordinance, which provided, that a contractor for such improvements should have no claim upon the city for such work. To this defense the plaintiff replied, (1) that the liability sought to be enforced did not come within the terms of the constitutional provisions; (2) that the city charter requires the levy of a special tax against the abutting owners, and the failure of the city to recognize their claim and to provide for its payment by such levy rendered the city liable. *Held:*

1. That the debt is embraced within the terms of the constitutional provisions.

2. That the failure on the part of the city to levy the special tax against the abutting property owners would not render it liable for the debt.

3. That the contract was entered into subject to the charter and ordinances of the city, and it was the evident intention of the contracting parties that the work should be paid for by the levy of a special tax against the abutting property owners, and that the debt could not be made a charge against the general revenue of the city.

2. **Same—Liability of City for Money Received.**—Where money is voluntarily paid into the treasury of a city by another, under a valid agreement with the city to pay one-half of the expenses of certain street improvements, and the money was to be applied to that object, and it was the understanding of the city and its contractor for such work that the money to pay for the same should come from such other party and

abutting property owners, the money so paid may be recovered from the city by the contractors.

APPEAL from Dallas. Tried below before Hon. R. E. BURKE.

*A. P. Wozencraft* and *T. A. Work*, for appellant.—1. No debt can ever be created by any city unless at the same time provision is made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least 2 per cent thereon. Const., art. 11, secs. 5, 7; City of Terrell v. Desaint, 71 Texas, 770; Biddle v. City of Terrell, 82 Texas, 335; Bank v. City of Terrell, 78 Texas, 450; Dallas City Charter, Act of 1889, secs. 154, 155, 185, 193; City of Galveston v. Devlin, 84 Texas, 319; Allen v. City of Galveston, 51 Texas, 302; City of Bryan v. Page, 51 Texas, 532; Williams v. Davidson, 43 Texas, 1; Dill. Mun. Corp., 443–459, 461, 480, 483; Brady v. Mayor of New York, 16 How. Pr., 492; Zottman v. San Francisco, 20 Cal., 105; Bladen v. Philadelphia, 60 Pa. St., 464; City of Leavenworth v. Rankin, 2 Kas., 357; Waxahachie v. Brown, 67 Texas, 530–532; Gould v. City of Paris, 68 Texas, 511; Saxton v. Beach, 50 Mo., 488.

2. Section 185 of appellant's city charter, providing that all public works the cost of which shall exceed $500 shall be let to the lowest bidder, necessitates an advertisement or notice, and a contract, and negatively prohibits the city from doing such work without such advertisement or notice. Dallas City Charter, secs. 185, 186; City of Bryan v. Page, 51 Texas, 532; Memphis v. Brown 20 Wall., 289; Dill. on Mun. Corp., 443–468; Morphy v. Albina, 29 Pac. Rep., 353; Hepburn v. Philadelphia, 24 Atl. Rep., 279; Allen v. City of Galveston, 51 Texas, 302; Frosch v. City of Galveston, 73 Texas, 401; Wood v. City of Galveston, 76 Texas, 126; Hahn v. Trustees of Bellevue, 3 S. W. Rep., 132; Dill. Mun. Corp., secs. 811, 480, note 2; Palladine v. New York, 56 Hun., 565; Davis v. Jackson, 28 N. W. Rep., 526.

3. The provision of the contract, that the same was entered into subject to all existing ordinances of said city, made said ordinances a part of the contract, and the provision in said ordinances, that a contractor for work to be paid for special assessments shall have no lien or claim upon the city for work done in pursuance of such contract, is absolutely binding. Transportation Co. v. Boyd, 67 Texas, 153; Dill. Mun. Corp., secs. 450, 480, note 2; O'Brien v. New York, 15 N. Y., 520; Galbraith v. Newton, 30 Mo. App., 380.

4. The contract being for the aggregate sum of $31,500, and providing that the same could only be altered, etc., by an agreement in writing signed by the parties to the original contract, limited and denied the power of the city engineer and street committee to increase the same, and therefore the extra pavement of said street and the extra width of the part so paved was done unlawfully and without authority, and in violation of said contract, and appellant is not bound to pay therefor. City of Bryan v. Page, 51 Texas, 535; Mackey v. Colum-

bus, 3 N. W. Rep., 899; Murdock v. District of Columbia, 22 Ct. of Cl., 464; Hepburn v. Philadelphia, 22 Atl. Rep., 279; Morphy v. Albina, 29 Pac. Rep., 353; Page v. Belvue, 14 S. E. Rep., 843; Lebcher v. Custer Co., 23 Pac. Rep., 713.

*Watts, Aldredge & Eckford,* for appellee.—1. No levy of tax to pay interest and provide a sinking fund was necessary to the validity of the contract. The city council should have levied a special tax upon the abutting property, after the contract was made. Having refused to recognize the claim and levy the tax, the suit was properly brought. Const., art. 11, sec. 5.

2. The representatives of appellant having staked out the street to be improved to a width of forty-one feet instead of thirty-seven feet, as contemplated by the plan and bid, and required the contractors to improve the same that width, appellant is bound to recognize the claim for the additional work and provide for its payment. Messenger v. City of Buffalo, 21 N. Y., 196; Gas Co. v. San Francisco, 9 Cal., 469; Fister v. La Rue, 15 Barb. (N. Y.), 323.

3. Having accepted the work and demanded and received of the railroad company one-half of the costs of the extra four feet in width, appellant will be held to have acquiesced in and ratified the acts and promises of the city engineer with reference to the extra four feet in width. Gaines v. Miller, 111 U. S., 395; Marshall County v. Schenck, 5 Wall., 722; Peterson v. Mayor of New York, 17 N. Y., 453.

FINLEY, ASSOCIATE JUSTICE.—This suit was instituted by plaintiff, F. O. Brown, appellee, in the Fourteenth Judicial District Court of Texas, Dallas County, on November 30, 1892, to recover of the defendant city of Dallas, appellant, the sum of $3008.14, for the cost of paving and grading four feet in width on Pacific avenue, from Griffin street to the Houston & Texas Central Railroad; said four feet alleged to be extra and over and above that contracted to be improved. Plaintiff's petition alleged that Laing & Smoot, a firm of contractors, entered into a contract with the city of Dallas, on June 28, 1890, whereby they agreed to excavate, pave, and curb said Pacific avenue between said points, according to plans and specifications on file in the office of the city engineer, for the sum of $31,500, and that according to said plans for said work, all that part of said Pacific avenue within the lines of the outside ends of the ties of the tracks of the Texas & Pacific Railway were to be excluded from the contract, and excluding that portion, the part to be paved under the contract was thirty-seven feet. That before said contract was made the city council of defendant had passed a resolution providing for said work and advertising for bids, to be based on the plans and specifications on file in the city engineer's office. That said Laing & Smoot, before making their bid, examined said plans and specifications, and that said plans showed that the part of the street to be improved according to said plans should be only

thirty-seven feet wide, and that upon the faith of said plans they bid upon the same, said bid being first itemized, and in the alternative for the aggregate sum of $31,500, which aggregate sum was intended by them to be about the same as the detailed bid, on the basis that said improvement was to be only thirty-seven feet wide. That the city of Dallas accepted said aggregate bid, and entered into said contract on June 28, 1890. That said contract provided that said Laing & Smoot should grade, excavate, and completely pave said street from curb to curb, and also provided that the city engineer or his assistant should stake out said work, and the contractor should preserve all stakes. That the city engineer staked the same out forty-one feet wide. That said contractors called the attention of the city's engineer and street committee to the fact, and were directed to do the work as staked out; that the work was fully completed, and on February 25, 1891, was accepted by defendant's city council, and said city then paid to Laing & Smoot on said work said sum of $31,500; that by reason of the improvement of said street by said Laing & Smoot forty-one feet wide, instead of thirty-seven feet wide as provided in said contract, said Laing & Smoot did extra paving of the value of $2707.98, and extra grading of the value of $300.16, according to the price named in their detailed bid to the city upon said work, and claimed that said Laing & Smoot was thereby entitled to the payment of said sum by defendant city; that said city failed and refused to pay the same, and that the claim of Laing & Smoot therefor was, before the filing of this suit, assigned by them for value to plaintiff, F. O. Brown.

Plaintiff also alleged in substance, that at and before this contract was made between Laing & Smoot and appellant, appellant and the Texas & Pacific Railway Company had an understanding or agreement in and by which the latter was to pay to the city one-half of the cost of the improvement of said Pacific avenue. And that upon the completion of said work and the acceptance thereof by the city, it caused an estimate of the cost thereof by the city to be made and presented to said railway company; that said estimate was upon the basis that the street improved was forty-one feet wide, and prices charged therefor were the same as in the detail bid of Laing & Smoot. And that immediately thereafter said railway company paid to appellant the amount of said estimate, to wit, $18,300. And that the appellant received said money and retained the same, and refuses to pay appellee the cost of said extra four feet, one-half of which was so paid to it by said railway company.

That Laing & Smoot immediately after said work was completed and accepted, presented their claim for said extra four feet width of street to the city council, but that it declined and refused to take any other action thereon than refer the same to the city attorney, where it still rests.

Said petition also sought to recover of defendant city the value of certain property of plaintiff alleged to have been converted by it, and

also certain sums alleged to be due on sundry other contracts, but the finding of the jury on said matters is not sought to be disturbed by the parties to this suit by this appeal, the only matters involved in this appeal being the question as to the right of plaintiff to recover of defendant on said contract for extra pavement and grading of Pacific avenue, as hereinbefore set out, and the amount of said recovery, if any. The defendant by its second amended original answer presented a general demurrer and special exceptions to said petition, which were by the court overruled, to which action defendant's exceptions were duly made and noted by the court; said answer also presented a general denial of the allegations, and special pleadings: (1) That no valid debt was created or existed against defendant by reason of the contract for said improvement or the making thereof, because no provision was at any time made by said city for the payment of said debt as provided by sections 5 and 7, article 11, of the Constitution of the State of Texas. (2) That defendant's charter provides that the cost of such improvements shall be paid by the owners of the property abutting on the street so improved, and that said charter provision is a measure and limitation of defendant's power to make such improvement. (3) That said contract was made subject to defendant's ordinances, and that said ordinances provide that a contractor or contractors for such improvement shall have no claim upon the city for payment for such work.

The cause was tried October 3, 1894, before a jury, and resulted in a verdict against the defendant on said count for extra cost of paving Pacific avenue in the sum of $3654.88, and for certain property converted, $450.91, aggregating $4105.79, including interest, and in favor of the defendant on the other counts in said petition, for which sum judgment was accordingly entered against defendant city. From this judgment the city appealed and has assigned errors.

For the purpose of expediting the determination of said cause, a brief statement of the case and the facts proven in said cause, as provided by articles 1414 and 1415, Revised Statutes, was agreed upon by the parties and approved by the court.

The facts proven upon the trial, as recited in the agreed statement, are as follows:

It was proved that on April 19, 1890, the city engineer submitted to the council of defendant, in writing, his estimate of the cost of paving with bois d'arc Pacific avenue from Griffin street to the Houston & Texas Central Railroad, designating in said report the width of paving as thirty-seven feet, and approximating the total cost of said improvement at $33,882.50, which report was adopted by said council and entered upon the minutes. That on May 20, 1890, defendant advertised for bids to do said work, requiring that said bids should be for the aggregate cost of said work, said work to be done according to the plans and specifications on file in the office of the city engineer; that at said time the plans on the file in the office of the city engineer provided for the width

of said pavement to be thirty-seven feet; that said Laing & Smoot made their bid upon the faith of said report and upon said plans and specifications. And that Laing & Smoot's bid is as follows:

"Proposal for paving Pacific avenue from Griffin street to Houston & Texas Central Railroad.

"DALLAS, TEXAS, May 28, 1890.

"*To the Honorable Mayor and Board of Aldermen:*

"GENTLEMEN—The undersigned propose to furnish all the material, tools, and labor necessary to perform the above mentioned work as per plans and specifications on file in the office of the city engineer, at the prices given below. Respectfully,          LAING & SMOOT.

| ITEM | PRICES IN LETTERS | IN FIGURES |
|---|---|---|
| "Excavation per c. yard........ | Twenty-eight cents............. | 28 cts. |
| "Limestone curbing per lin. ft. | Seventy cents................. | 70 " |
| "Paving per sq. yard .......... | One dollar and sixty-nine cents.. | $1.69 " |
| "Or the aggregate sum of, for excavation, curbing, and paving | Thirty-one thousand and five hundred dollars | $31,500.00 |

[Seal]          [Signed]          "W. C. CONNOR, Mayor.
          [Signed]          "LAING & SMOOT.

"Attest: [Signed] WM. McGRAIN, by F. R. R."

That said aggregate bid was accepted by the defendant, and on June 28, 1891, the contract was entered into for the making of said improvement as per said plans and specifications, said specifications being attached to said contract, but no plans being attached thereto; that said contract provided that said Laing & Smoot should completely pave from curb to curb with bois d'arc blocks, good and sound, furnishing all labor and material therefor at their own cost and expense, Pacific avenue from Griffin street to the Houston & Texas Central Railway, except the intersections of the street, and that they should also completely curb said part of said avenue. Said contract further provides, that the same was entered into subject to all existing ordinances of the said city of Dallas. Said contract further provides, as follows: The city may make such alterations and modifications of these specifications or plans of this contract, or may omit from the work covered by the contract any portion of the street or territory originally ordered improved. The prices to be paid for the work under such altered or modified contract to be agreed upon in writing signed by the parties to the original contract. The plans for said improvement were not produced on the trial. The evidence showed that they could not be found. The contract further provided, that said work should be done under the supervision, control, and direction of the street committee and city engineer, and according to their instructions, and that the work should be laid out by the city engineer, and that the contractors should pre-

serve all the stakes. The evidence showed, that when Laing & Smoot started out to make said improvements they found that the engineer had staked out said pavement forty-one feet wide, instead of thirty-seven feet; that they complained to him before beginning the work about it, and he told them that it must be made that way or not at all, and to go ahead, and they should be paid for the work.

The evidence also showed, that the street committee knew of the width that said pavement was being laid at the time the work was going on. The evidence further showed, that defendant's city council was not informed of the fact that said pavement was being made wider than was provided for in said contract, as a body, until the completion of said work, and then only by the presentation of a bill by Laing & Smoot for pay for the extra width of said pavement, and from their petition for the payment of the same. The evidence further showed, that Laing & Smoot knew that said pavement was wider than the plans provided for at the time they were doing the same; and further showed, that no supplemental contract or agreement in writing or of any kind was ever made between said Laing & Smoot and said city council for the performance of said extra work.

The evidence also showed, that the Texas & Pacific Railway Company, in order to get defendant to make said improvement, agreed to pay one-half the cost thereof, and that upon completion of said work the city of Dallas paid to Laing & Smoot for the making of said improvement, and for the performance of certain extra work not provided for in said contract, to wit, the improvement of street intersections intersecting said Pacific avenue, between the points improved, the total sum of $35,476.08. That the Texas & Pacific Railway Company paid the city of Dallas on account of said contract and said extra work the sum of $18,300 as their one-half of the same. The evidence further showed, that the amount paid by the city of Dallas to said Laing & Smoot on account of said paving, grading, and curbing, included in said contract, was $31,500, as provided in said contract. The evidence showed that said Laing & Smoot completed said improvement according to instructions of said city engineer, and that the same was received and accepted by defendant's city council.

Section 154 of defendant's city charter was introduced in evidence, as follows: "Section 154. The city council shall have full power and authority to grade, fill, raise, repair, macadamize, pave, repave, or otherwise improve any avenue, street, or alley, or any portion thereof, in the city, to such extent and out of such material and under such regulations as said city council may provide; whenever a majority of the aldermen present vote in favor of said improvement. All grading of street and sidewalk shall be at the cost of the city. All repairing of street shall be at the cost of the city, unless herein otherwise provided. The word repairing, as here used, shall apply only to small or ordinary defects in the streets that have been put up to grade and paved or macadamized. All other of such improvement at the cost of the fronting

or abutting property owners on each street so improved, who shall pay pro rata such entire cost according to the number of fronting or abutting feet respectively owned by them on such street; provided, that when any person, corporation, or company owns or operates any street railroad or railroad of any kind on such street, avenue, or alley, such person, corporation, or company shall pay for paving or otherwise improving that part of the street between the rails of such road, and the owners of fronting property shall be relieved of their pro rata of such sum so paid by such railroad. The city shall out of the general fund pay for all street intersections so improved, except that portion occupied or used by said railroads, which must be paid as above provided by the owners or operators thereof. Property owners shall pay the entire cost of all curbing. The pro rata share of the cost of such improvements due from property owners and said railroads as above provided, together with the expense of collecting the same, shall be a special tax or lien against the lot or lots or blocks fronting or abutting upon the streets improved, and against the roadbed, ties, rails, fixtures, rights, and franchises of such street or other railroads that may be operated thereon. The city council shall, by resolution duly passed, designate the street or streets, avenues or alleys, or portions thereof, to be improved, the nature of the improvements to be made, and material to be used. When the council shall so determine upon such improvement they shall advertise for bids, giving the plans, specifications, and the extent of the improvements. The work shall be let to the lowest responsible bidder in the discretion of the council, and with such bonds as the council shall require. Said council shall levy a special tax upon the property fronting or abutting upon the street so improved for the pro rata amount due from property owners, and when street or other railroads are operated upon said street, the council shall levy a special tax upon the roadbed, ties, rails and fixtures, rights and franchises of such road for the pro rata share due from them for improving the space between the rails for such road. Said tax shall be levied after the contract is let, shall become due and delinquent as the ordinance letting the same may specify, shall be a lien from the time of the levy, and shall be used for the payment of said improvement. If said taxes be not paid as provided for by ordinance, their collection shall be enforced as the collection of other taxes by advertisement and sale of the property, rights, and franchises levied upon; provided, it shall not be necessary to sell at the same time as for delinquent ad valorem taxes. At such sales the collector shall execute to the purchaser a deed similar to the one executed when property is sold for ad valorem taxes."

The evidence showed, that the ordinances of defendant in force at the time of letting said contract, and ever since said time, provided as follows: "Any person taking any contract with the city of Dallas, and who agrees to be paid from special assessment, shall have no claim or lien upon the city for payment for the work done in pursuance of

said contract. And no work to be paid for by special assessment shall be let except a contractor or contractors will so agree."

There was no provision in the contract that Laing & Smoot agreed to be paid from special assessments, except as that is affected by the provisions of the city's ordinances. The evidence further showed, that the amount of $31,500, with extras as herein before stated to have been paid to Laing & Smoot by defendant, was the total amount estimated by the city engineer in his estimate to the city council.

The evidence further shows, that the plan which provided for the pavement should be forty-one feet wide, instead of thirty-seven, was furnished to the city engineer by the Texas & Pacific Railway Company, and was never adopted by the defendant's city council. That said plan was merely an outline of the street, showing the width of pavement and sidewalk, and position of said railway track on the street. Said plan was introduced in evidence, but had no file mark of any officer of defendant, or signature of any officer of defendant upon it.

The evidence showed, that no special tax had been levied against the abutting property owners owning property abutting on said portion of Pacific avenue for the payment of their respective pro rata shares, except the remainder of said sum of $31,500 provided for in said contract (after deducting the amount paid for by said railway company), and that no ordinance had ever been passed assessing the cost of said extra four feet in width against said property owners. It was also proved, that the Texas & Pacific Railway Company, on February 29, 1891, paid defendant city one-half of the cost of said work, including the extra four feet in width of the street, according to the price named in the detailed bid of Laing & Smoot. It was proved, that upon completion of said work the city of Dallas paid Laing & Smoot $31,500; and that the petition of said Laing & Smoot presented after the completion of the said improvement to the said city council, asking payment for said extra four feet in width, had never been acted upon by said city council, but had been referred to the city attorney for his opinion. The evidence showed, that no provision was made other than as herein stated for the payment of the debt created by the entering into of said contract, either at the time of entering into same or at any other time. Laing & Smoot's claim against the city for the payment of the cost of said four feet of extra improvement was, before the filing of this suit, assigned for full value to plaintiff.

*Opinion.*—It is urged by appellant that the city is not liable to appellee for paving the four feet, alleged to be extra work not embraced within the contract; for the reason, that the city made no provision for the payment thereof, as required by article 11, sections 5 and 7, of the Constitution of the State.

Appellee contends that the liability sought to be enforced against the city for the extra paving does not come within the terms and meaning of these constitutional provisions; that the city charter provides that

such street improvement shall be at the cost of the fronting or abutting property owners, and requires the levy of a special tax against such property, to pay for the improvement, to be made after the contract for such improvement is let. A failure on the part of the city to recognize the claim and provide for its payment by such levy, it is urged, rendered it liable in this suit.

The sections of the Constitution referred to, so far as relative to the question in hand, are as follows:

"Section 5. . And no debt shall ever be created by any city, unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least two per cent thereon."

"Section 7. But no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made at the time of creating the same for levying and collecting a sufficient tax to pay the interest thereon, and provide at least 2 per cent as a sinking fund."

The terms of these provisions are plain, and would seem to be sufficiently comprehensive to embrace every contract on the part of the city from which a debt necessarily arises.

In City of Terrell v. Desaint, 71 Texas, 774, 775, it is said: "But it is contended that the promissory note sued upon in this case is not a debt, within the meaning of the provisions of the Constitution which limit the power of cities to create indebtedness; and the statutes which regulate the manner in which such debts shall be evidenced and secured. To state appellee's position more specifically, as it is claimed that the debt in this case was current expenses, and being chargeable upon the current expense fund, it does not come within the purview of the provisions of the Constitution and the statutes to which we have referred. It is held in the case previously cited (Corpus Christi v. Woessner, 58 Texas, 462), that 'the issue of warrants on current expenses of a city, which do not exceed the current revenue derived from taxation' is not the creation of a debt prohibited by the Constitution. We do not doubt the correctness of that ruling. We freely concede that debts for the ordinary running expenses of a city, payable within a year out of the incoming revenues of the year, and with other indebtedness not clearly in excess of the yearly income for general purposes, can be created by a city. But we think that a debt for current expenses, in order to be valid without a compliance with the constitutional and statutory requirements to which we have referred, must run concurrently with the current resources for such purposes, and that such a debt can not be created without such compliance, which matures at such a time as would make it a charge upon the future resources of the city. It may not be easy to define accurately what are the current expenses of a municipality. But we may ask, if a city can create a debt of $1500 for materials to extend its waterworks, and make it payable with interest one and two years after date, why may it not create an indebtedness for a larger sum for any public improvement which it has

the power to construct, and make it payable at a longer period? It is clear to us that if this were permitted, the provisions of our Constitution and statutes, which limit the power and regulate the manner of the creation of municipal indebtedness would be entirely nugatory."

The theory upon which a recovery is sought in this case is, that the city engineer and street committee had authority to represent the city; that they directed the extra paving to be done, and that the city accepted the work, and thereby became liable to pay appellee the reasonable value thereof. Waiving the question whether the city could be bound in that manner, we will inquire whether the city, through its council, could bind itself to pay for paving a street, without providing a means of meeting the debt, in harmony with the Constitution?

In Citizens Bank v. City of Terrell, 78 Texas, our Supreme Court says: "A city can not create a debt unless the power to do so is expressly or impliedly conferred upon it by law.

"If the law prohibits the creation of a debt for any purpose, then no attempt to create one would have any force.

"If the law permits the creation of debts for specified purposes only, an attempt to create one for a purpose not specified would be without validity.

"If the law authorizes the creation of debt for a specified purpose, but limits the amount and prescribes the manner of creating such debt, any attempt to create one greater than the amount specified, or without substantially observing the regulations prescribed, would be equally without force." * * *

"While our Constitution authorizes the creation of a debt and the issuance of its negotiable bonds by the defendant city to provide for constructing waterworks, its mandate is imperative that no such debt shall be created without making provision at the time of its creation to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least 2 per cent of the principal." * * *

"Until that is done, the debt is not created and none exists. If not forbidden by another provision of the Constitution, the levy may provide for the collection of a greater sum than the interest contracted for and 2 per cent additional, but it can not be less than that. The language is plain and unambiguous, and in relation to cities the command is twice given." * * *

"When the debt is void in its inception for want of authority to create it, no subsequent ratification of it by the collection of taxes or otherwise can give it any validity, nor can there then be such a thing as a bona fide holder of the obligations, with a right to collect them, notwithstanding the want of power in the city to create the debt." * * *

"The command of our Constitution is, that when the debt is created provision shall then be made for levying and collecting a tax to dis-

charge it. It amounts to more than a direction that no debt shall ever be created above such a sum as the directed levy will pay."

The city in this instance was required by its charter to provide for the payment of the cost of paving its streets by special levy of a tax upon the abutting property; this it did to the extent of one-half the aggregate contract price of the work, the railway company having agreed to pay the other. It made no provision whatever for paying the cost of the work here sued for. If the city could not legally bind itself by contract to pay for such work, without providing the means of paying for it, can it be said that its failure to levy the tax for the purpose would render the city liable? Suppose no levy of a tax had been made against the abutting property to cover the cost of any of the work of paving Pacific avenue, would the city, through its failure to make the levy, have become liable for the debt thus created? If this question may be answered in the affirmative, then a very easy and successful method of evading the Constitution is accessible, in all cases of creating debts for the paving of streets, a most fruitful source of municipal indebtedness. If the work for which appellee seeks compensation was not covered by the original contract, and he was induced to perform the work by the city under the promise that he would be paid for it, as extra work, it would seem that in justice and good conscience he should receive his compensation. But municipal corporations are creatures of limited powers; they can only become bound within the limits of the powers conferred upon them, and as these powers are declared by law, all persons dealing with them must be held to have notice of the extent to which they may incur liabilities. If the city could not become liable through express and direct action, without providing for the payment of the debt, it certainly will not be seriously contended that it may be made so by the actions of its agents —the city engineer and street committee.

Aside from the question of the limitations of the Constitution upon the power of the city to incur such liability in the manner indicated, the charter of the city, section 154, expressly provides that all improvements of streets, except the grading of streets and sidewalks and the improvement of street intersections and repairing of streets, shall be entirely at the cost of abutting preperty owners, and street and other railroads, etc., and that a special tax shall be levied against such property to pay the costs, etc. An ordinance of the city in force at the time the work was done provided: "Any person taking any contract with the city of Dallas, and who agrees to be paid from special assessment, shall have no claim or lien upon the city for payment for the work done in pursuance of said contract. And no work to be paid for by special assessment shall be let, except a contractor or contractors will so agree."

Section 185 of the city charter requires that all public works, the cost of which shall exceed $500, shall be let to the lowest bidder, etc.

The contract was entered into expressly subject to the charter and ordinances of the city.

It is clear to us that it was the intention of the contracting parties that the paving of Pacific avenue should be paid for by the railroad and abutting property owners, through the levy of a special tax for the purpose, and that it should not be made a charge against the general revenue of the city. This is the way in which the city was authorized to contract for the work, and we can see no ground upon which the contractors could justly claim that the debt should be made a charge against the general revenue of the city.

In discussing this subject of implied liability of a corporation, Mr. Dillon, in his work on Municipal Corporations, section 459, says: "The present state of the authorities clearly justifies the opinion of Chancellor Kent, that corporations may be bound by implied contracts within the scope of their powers, to be deduced by inference from authorized corporate acts, without either a vote, or deed, or writing. This doctrine is applicable equally to public or private corporations, but in applying it, however, care must be taken not to violate other principles of law. Thus, it is obvious that an implied promise can not be raised against a corporation, where by its charter it can only contract in a prescribed way, except it be a promise for money received or property appropriated under the contract. So, where the corporation orders local street improvements to be made, for which the abutters are the parties ultimately liable, and which by the charter must be made in a prescribed mode, if made without any contract or a valid one, the doctrine of implied liability does not apply in favor of the contractor, unless, indeed, the corporation has collected the amount from the adjoining owners, and has it in its treasury."

In a note under this section, it is said: "But where a contractor for the improvement of streets agreed that he would not look to the town in any event for compensation, and it was afterwards decided that the contract was ultra vires and void, and that the lot owners were not liable for the work, it was held that the town was not liable to him, by reason of its *inherent power* to improve streets. Belleview v. Hohn, 82 Ky., 1; post, secs. 467, 480. So where the charter of a city declared that it should not be liable in any manner for local improvements which are made a charge upon the adjacent property, and the council by a resolution which was a nullity, because of the nonconcurrence of the mayor, ordered a certain local improvement to be made and the work let to the plaintiff, who did it, and failed to collect the same (by reason of the nullity of the resolution) from the adjoining owners (Saxton v. Beach, 50 Missouri, 488), and having expended a considerable sum in an unsuccessful attempt to charge the abutting property, he brought suit against the city to recover the sum so expended in testing the validity of the resolution of the council. The Supreme Court of Missouri held that the city was not liable."

In section 480, it is further said: "A municipal corporation contracted with a paver to do certain work at a fixed price, of which it was to pay one-third, and the owners of abutting property two-thirds. It was judicially determined that the proprietors were, in law, liable to pay only one-third; and it was held, in an action by the paver against the corporation, that it was a *warrantor* for the remaining one-third; and it was held liable accordingly. But where the charter or constituent act in reference to improving streets provides that *the city shall be liable to the contractor for so much only* of the improvement as is occupied by streets and alleys crossing the same, and that the owners of adjacent lots shall be liable for the rest, the city is not liable for the deficiency in case the adjacent property does not sell for enough to pay the assessment, and though the owner be a nonresident."

Is the city liable to the extent of the amount it received from the railroad to be applied to payment for this extra work? The promise of the railroad to pay half the expense of the paving of the street was valid, and could be enforced. 1 Dill. Mun. Corp., sec. 458. The city was authorized by its charter to have the work done, and force the railroad and abutting property owners to pay for it. The railroad voluntarily paid half of the expense of this extra work into the city treasury to be applied to that object, and the city has refused to pay the money over to the contractor. Can the city hold on to this money, and at the same time escape liability for the work to satisfy which it was paid into the city treasury?

In the case of Gould v. City of Paris, 68 Texas, 520, where the city had purchased a fire engine, cart, and hose, and failed to levy a sufficient tax to pay for it, and was sued for the debt, in discussing the question as to whether a recovery could be had to the extent of the tax paid into the treasury for the purpose of paying the debt, Mr. Willie, Chief Justice, says: "This money was collected to pay a supposed debt, and was paid to the city in trust that it would be paid over to the plaintiff only in the event that he held a valid claim against it, otherwise its collection would doubtless have been resisted. If, therefore, the city held it in trust for the plaintiff, this trust was accompanied with the condition stated. This suit having developed the fact that the debt did not exist, the city could not pay the money over to the plaintiff without a violation of the condition; and it follows, of course, that he could not have a judgment for its recovery."

We do not think this case falls within the principle just announced. Here the money was not paid into the treasury of the city through the coercive method of taxation, but upon a voluntary agreement entered into between the city and the railroad company. It was never intended in this case by any of the parties that the city should in any event pay for the work out of the general revenue of the city; but it was fully understood that the money to pay for the work was to come from the railroad and owners of abutting property. The city charter not only prohibited the city from becoming liable, but provided that

it should collect the money from that source, and so apply it; and its ordinance provided that the contractor should look alone to the fund so realized for payment. Under such a state of facts, we are of opinion that no sound principle of law or equity would justify the city in retaining the money so paid to it, and denying its liability for the work to the extent of that sum.

Our view of the case is, that the city is liable for the extra work to the extent of the sum paid to it by the railroad company on that account, but no further.

The court erred in rendering judgment against the city for the entire sum claimed for extra work, and the judgment must for that reason be reversed. The record is not sufficiently definite as to the amount paid by the railroad on this account to the city, to justify us in rendering the judgment, and hence the cause will be remanded.

*Reversed and remanded.*

Delivered May 8, 1895.