## CITY OF ARANSAS PASS Ѵ. EUREKA FIRE HOSE MFG. CO. (No. 6487.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 12, 1921.)

**1. Appeal and error ⬳564(2) — Exceptions, bill of ⬳40(1)—Bills of exceptions and statement of facts held filed in time.**

Where writ of error was applied for on September 9, 1920, and citation served September 15, 1920, and on October 30, 1920, more than seven months after final judgment was rendered, the district judge made an order extending the time for filing the statement of facts and bills of exception until December 1, 1920, and a statement of facts was filed in the appellate court on November 29, 1920, more than eight months after the final judgment was rendered, a motion to strike out bills of exceptions and statement of facts will be overruled, under Rev. St. art. 2086, as amended by Acts 36th Leg. (1919) c. 85, and article 2073, as amended by Acts 32d Leg. (1911) c. 119, § 7 (Vernon's Sayles' Ann. Civ. St. 1914, art. 2073), since it is legal to file a statement of facts just as long as it is legal to file a transcript in an appellate court, and the time for filing bills of exception being within the legal limit or that of extensions.

**2. Appeal and error ⬳770(1)—No complaint as to lateness of briefs where defendant in error filed brief.**

A complaint that the brief of plaintiff in error was not filed in time for defendant in error to file a brief cannot be entertained where defendant in error filed a brief.

**3. Municipal corporations ⬳868(1)—Warrant incurring debt without requiring levy of tax void.**

A warrant evidencing an attempt by a city to incur a debt without at the same time complying with the constitutional provision requiring the levy of a tax to meet interest and sinking fund is absolutely void.

**4. Municipal corporations ⬳905—Finding that warrant for fire hose was to be paid out of current revenues justified by evidence.**

In an action on a warrant of a city issued in payment of purchase price for hose, evidence *held* to justify a finding that the purchase price was to be paid out of current revenues of the city for the year.

**5. Municipal corporations ⬳868(1) — Debts for current expenses not within purview of constitutional inhibition against debts.**

Debts for the ordinary current expenses of a city payable within a year out of the incoming revenues do not come within the purview of Const. art. 11, § 7, providing that no debt shall be incurred unless provision is made for levying and collecting a tax to pay the interest and provide sinking fund, and hence a warrant given for fire hose with the intention that it be paid out of the current revenues did not come within the purview of such constitutional inhibition.

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Error from District Court, San Patricio County; M. A. Childers, Judge.

Suit by the Eureka Fire Hose Manufacturing Company against the City of Aransas Pass. Judgment for plaintiff, and defendant brings error. ' Affirmed.

John De Berry Wheeler, of Aransas Pass, for plaintiff in error.

W. H. Baldwin, of Rockport, for defendant in error.

FLY, C. J. Defendant in error sued on a certain warrant executed to it by plaintiff in error. of date November 17, 1915, due on July 2, 1916. The court tried the case without a jury, and rendered judgment for the hose company for $1,100, with 6 per cent. interest from November 17, 1915.

The writ of error was applied for on September 9, 1920, and citation served on September 15, 1920. On October 30, 1920, more than seven months after final judgment was rendered, the district judge made an order extending the time for filing statement of facts and bills of exception until December 1, 1920. The statement of facts was filed in this court on November 29, 1920, more than eight months after the final judgment was rendered.

[1] In article 2086, Revised Statutes of Texas, as amended by the Thirty-Sixth Legislature, Regular Session (Gen. Laws, p. 136), it is provided:

"The writ of error may, in cases where the same is allowed, be sued out at any time within six months after the final judgment is rendered and not thereafter."

In this case final judgment was rendered on March 16, 1920, and the city of Aransas Pass had the right to sue out a writ of error at any time from that date to September 16, 1920, and any time within 90 days after service of the citation in error, which was September 15, 1920, the plaintiff in error could file its statement of facts in the Court of Civil Appeals. Article 2073, as amended by Acts 32d Leg. (1911) c. 119, § 7 (Vernon's Sayles' Ann. Civ. St. 1914, art. 2073). Commenting on that article, this court held that—

It "applies to a writ of error as well as to an appeal, and that a statement of facts filed at any time within twelve months after the final judgment was rendered would be in time for a writ of error." Canal Co. v. Quinn, 160 S. W. 151.

It might have. been added in the opinion, as is permitted by article 2073, that as the transcript could be filed within 90 days after the citation in error was served the statement of facts could also be filed within that

time. In other words, just as long as it is legal to file a transcript in an appellate court it is legal to file a statement of facts. The act in question, however, does not apply to bills of exception, but the time for filing must be within the legal limit or that of extensions. Unknown Heirs of Criswell v. Robbins, 152 S. W. 210. The bills of exceptions were filed within the time of the extension. The motion to strike out bills of exceptions and statement of facts is overruled.

[2] The complaint as to the briefs of plaintiff in error, not being filed in time for defendant in error to file a brief, cannot be entertained, for the potent reason that defendant in error has filed in this court a brief.

We adopt the findings of fact of the trial judge, as follows:

"In July, 1915, the city of Aransas Pass, defendant herein, a city of less than 5,000 inhabitants, purchased from the plaintiff, the Eureka Fire Hose Manufacturing Company, the following articles, mentioned in plaintiff's petition, to wit: 1,000 feet Helmet Single brand of fire hose, coupled complete; two 500-foot capacity reels; four underwriters play pipes; two shut-off nozzles, with spray attachment; and six spanner wrenches, for the use of said city. Said property was all delivered to the defendant in the month of July, 1915, according to contract of purchase, for the agreed price of $1,100.

"II. The said property mentioned above was all purchased by the said city defendant through its legally constituted officers, and in the purchase of said property, which was necessary for the protection of said city, it was in contemplation of the parties that the purchase price therefor, to wit, $1,100, should be paid for out of the current revenues of the said city for that year; and the court further finds that said property was worth the prices charged for same, to wit, a total of $1,100.

"III. On November 17, 1915, the said account for $1,100, which had been running as an open account from the time of the delivery of said goods, to wit, in July, 1915, was still unpaid, and the defendant, the city of Aransas Pass, issued to the plaintiff, and delivered to it, through its duly authorized agents, the warrant herein sued on, in words and figures, as follows, to wit: 'The city of Aransas Pass will pay to the Eureka Fire Hose Manufacturing Company, or order, $1,100, the sum of eleven hundred dollars, out of the general fund as allowed by the city council on the 17th day of November, 1915, for fire hose and apparatus as per invoice, July 2, 1915, due July 2, 1916, with int. 6 per cent. [Signed] Jesse J. Todd, Mayor; Chas. G. Gile, Secretary. [Seal].' In the issuance and delivery of said warrant, it was intended by the parties thereto, both the city of Aransas Pass, in issuing it, and the plaintiff, in receiving it, that it was to be paid out of the current revenues of the said city for said year.

"IV. The expenditures of said city for the year 1915 exceeded its revenues by $2,000 or more.

"V. The said warrant has never been paid, nor has any part thereof been paid, and the said hose and other property mentioned above, purchased from the plaintiff, is still, and has ever since its purchase and delivery to defendant been, in the possession and use of the defendant."

[3] The first assignment of error assails the ruling of the trial judge in admitting in evidence a warrant or voucher given by the mayor and secretary of the plaintiff in error to defendant in error for $1,100, which recited that it was given "for fire hose and apparatus" bought on July 2, 1915, to be paid for on July 2, 1916, "out of the general fund as allowed by the city council." The assignment of error is not the first, but the second, in the record. Proper briefing requires numbering as numbered in the record, or at least notice that the numbering has been changed and how. However, we consider the only proposition under the assignment, which is:

"A warrant evidencing an attempt by a city to incur a debt without at the same time complying with the constitutional provision requiring the levy of a tax to meet interest and sinking fund is absolutely void."

As an abstract proposition of law, that proposition is undoubtedly correct, but to make it effective there should be evidence to sustain it.

[4] The evidence in this case shows that the hose was sold to plaintiff in error on an open account, the agreement being that it should be paid for in four months, with privilege of an extension for eight months more. At the end of four months the bill was unpaid and then the warrant was given payable July 2, 1916. The warrant provides for payment out of the general fund, and as it was to be paid within a year it can be assumed that it was to be paid out of the current funds of that year. The contract itself indicated that it was not to be paid out of revenues for future years, but out of current funds. The evidence showed that the assessed valuation of the city property was $1,200,000, and the rate of taxation was 25 cents on each $100 of that valuation, which would amount to $3,000 per annum, besides poll taxes, occupation taxes, and back taxes. The back taxes amounted to $5,000 or $6,000. There was collected for the general fund in 1915 the sum of $7,987.60. The warrant was to be paid out of that fund. The hose was necessary, if there was to be any protection from fire. The plaintiff in error got the hose and used it, and still has it, and paid nothing for it. The court was justified by the evidence in finding that the purchase price of the hose was to be paid out of current revenues of the city.

[5] The state Constitution (article 11, § 7) provides that—

"No debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent. as a sinking fund."

Debts for the ordinary current expenses of a city, payable within a year out of incoming revenues, have been held not to come within the purview of the constitutional inhibition. City of Terrell v. Dessaint, 71 Tex. 770, 9 S. W. 593; Biddle v. City of Terrell, 82 Tex. 335, 18 S. W. 691; McNeal v. City of Waco, 89 Tex. 83, 33 S. W. 322; City of Tyler v. Jester, 97 Tex. 344, 78 S. W. 1058; City of Dallas v. Brown, 10 Tex. Civ. App. 621, 31 S. W. 298; City of Cleburne v. Water Co., 14 Tex. Civ. App. 230, 37 S. W. 655.

As said by the Supreme Court, in the McNeal Case herein cited, in regard to a claim against the city of Waco for over $3,000 for material and labor used in building seven underground cisterns:

"These constitutional provisions were intended as restraints upon the power of municipal corporations to contract that class of pecuniary liabilities not to be satisfied out of the current revenues or other funds within their control lawfully applicable thereto, and which would therefore at the date of the contract be an unprovided for liability and properly included within the general meaning of the word debt. They have no application, however, to that class of pecuniary obligations in good faith intended to be and lawfully payable out of either the current revenues for the year of the contract or any other fund within the immediate control of the corporation."

It was held that a courthouse or jail might be built out of funds in hand and that a written obligation given therefor by city or county could be enforced. That doctrine was reaffirmed in the Jester Case, cited herein, and the court said:

"If it were held that a city could not make a binding contract, unless at the time it had revenue sufficient to discharge all of its current expenses, and that every person who should deal with it must do so at his peril, taking the chance of a deficit in revenue, it would be absolutely destructive of the power of every city in the state to carry on its ordinary governmental affairs, for it is well known that the business of a city is conducted upon the basis of credit and depends entirely upon the collection of taxes from time to time with the claims for current expenses running over from one month to another. We believe that such a contract, though not paid off during the year for which it was made, remains a valid debt against the city, which it may and should discharge out of the revenues for future years in excess of its current expenses."

Our conclusions of fact and the decisions cited dispose of all the assignments of error, and the judgment is affirmed.