## ANDRUS v. CRYSTAL CITY.   (No. 6964.)

(Court of Civil Appeals of Texas. San Antonio. May 30, 1923. Rehearing Denied June 27, 1923.)

1. **Municipal corporations** &#8646;868(1)—**Debts may be created without tax levy when payable from funds of current year.**

Municipal debts may be created without a tax levy when they are to be paid out of the funds for the current year.

2. **Municipal corporations** &#8646;868(2)—**Statute relating to purchase of light and water plants by municipality cannot be evaded by mere failure to comply with particular provision.**

Vernon's Sayles' Ann. Civ. St. 1914, arts. 772a–772f, relating to the purchase of light and water systems by municipalities and providing the manner of payment therefor, cannot be evaded merely by failure to comply with article 772c, requiring that bonds issued in payment shall provide on their face that the owner thereof shall never have the right to demand payment out of any funds raised or to be raised by taxation.

3. **Municipal corporations** &#8646;886—**Recovery on warrants given in payment for light plant purporting to be payable from general fund held not warranted.**

In an action to collect on overdue warrants which purported to be payable from the general fund, which were shown to have been given in payment for an electric light plant purchased by defendant from plaintiff under authority of Vernon's Sayles' Ann. Civ. St. 1914, arts. 772a–772f, and payable only from the net profits of the plant, and where defendant had abandoned such plant and tendered it back to plaintiff, held, notwithstanding both parties denied the transaction was under such statute, that the statute was nevertheless controlling and precluded a recovery by plaintiff from the general fund.

Appeal from Zavala County Court; N. H. Hunt, Judge.

Action by Ed. Andrus against Crystal City. From a judgment for defendant, plaintiff appeals. Affirmed.

L. Old, of Uvalde, and Geo. C. Herman, of Batesville, for appellant.

Vandervoort & Johnson, of Carrizo Springs, for appellee.

FLY, C. J. Appellant instituted this suit to recover of appellee the sum of $700, as evidenced by 7 city warrants issued by appellee. The defense was that the warrants were given as part of a series of warrants issued by appellee in payment of an amount due on an electric light plant, sold by appellant to appellee, and that the same were illegally issued by appellee, in that they were made payable out of the general fund, and when the debt was made no other provision was made for payment of the debt, except the issuance of the warrants, and there was no fund out of which they could legally be paid. The cause was decided by the court without a jury and judgment was rendered in favor of appellee.

The facts show that appellee is a municipal corporation chartered under the general statute, and when incorporated had over 1,000 inhabitants and less than 5,000, and its governing body consists of a mayor and two commissioners. The 7 warrants sued on are a portion of 26 warrants issued in payment of an electric light plant sold by appellant to appellee, under a written contract made between the two parties on March 26, 1921. The 7 warrants were due and unpaid. A chattel mortgage was reserved to secure payment of the purchase money, and the deed to the realty was placed in escrow to await payment of the money. It seems that a new mayor was elected and on May 3, 1921, little more than a month after the contract was made, an order was entered on the minutes of the city by its governing body repudiating and setting aside the contract with appellant, and it notified him at once of its action and tendered him all the property obtained from him. The appellee had a debt at that time for waterworks of $16,250. The contention in this case is that no provision having been made at the time the debt was created for its payment, as required by article 11, § 7, state Constitution, it was invalid. Under the terms of article 772a, Vernon's Sayles' Civ. Stat., cities and towns are given the power to mortgage and incumber any light systems or water systems, and the incomes thereof, and everything pertaining thereto, acquired or to be acquired, to secure the payment of funds to purchase the same. That law was enacted in 1911, and it is made applicable to cities incorporated under the provisions of article 1075 of the statutes enacted in 1913 providing for commission form of government. That feature is retained in the amendment of 1921. Gen. Laws 1921, pp. 123, 124 (Vernon's Ann. Civ. St. Supp. 1922, art. 1075).

[1] It has been consistently held that debts

---

&#8646;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

may be created without a tax levy when they are to be paid out of funds for the current year, the reason being that there would be no necessity for levying a tax when the money is already in hand or fully provided for. Aransas Pass v. Hose Co. (Tex. Civ. App.) 227 S. W. 330. In passing the act as embodied in article 772a, and other articles, the Legislature evidently had in view the providing of a fund to pay for the electric light works, without necessitating a tax levy. A mortgage was authorized, not only on the plant itself, but also on the income arising from the operation of the plant, after paying all salaries, amounts for labor, material, interest, repairs and extensions, "to secure the payment of funds to purchase same." The object was not to create a debt, within the purview of the Constitution, which would be a burden on the taxpayers, but one that was secured by the property purchased by the city. As said in City of Tyler v. Jester, 97 Tex. 344, 78 S. W. 1058:

"These constitutional provisions were intended as restraints upon the power of municipal corporations to contract that class of pecuniary liabilities not to be satisfied out of current revenues or other funds within their control lawfully applicable thereto, and which would therefore at the date of the contract be an unprovided for liability and properly included within the general meaning of the word debt. They have no application, however, to that class of pecuniary obligations in good faith intended to be and lawfully made payable out of either the current revenues for the year of the contract or any other fund within the immediate control of the corporation."

Under the provisions of articles 772a and 772b, no burden of taxation is placed upon the citizens of the city, but the vendor of the electric light or water plant is relegated to the property sold and its net income and he is fully notified that he can in no way collect his money except from the property itself and that outside of and beyond that the city is in no wise liable. In order that there should be no misconception or misunderstanding as to the intent of the statute, it is provided in article 772c:

"Every contract, bond or note issued or executed under this act shall contain this clause: 'The holder hereof shall never have the right to demand payment of this obligation out of any funds raised or to be raised, by taxation.' No such obligation shall ever be a debt of such city or town, but solely a charge upon the properties so incumbered, and shall never be reckoned in determining the power of such city or town to issue bonds for any purpose authorized by law."

[2] While from the language and import of the preceding articles it is apparent that no taxation was intended to pay the debt for an electric or water plant, the emphatic language of article 772c makes everything clear and leaves no place for construction. That article could not be evaded or its efficacy impaired by a failure to place the language required in the contract or warrants, but it will be read into them by the law.

[3] This cause presents some singular aspects. In the first place appellant has instituted suit on 7 city warrants, which are made payable out of the "general fund," although they, taken with the contract, clearly show that no provision was made for their payment out of the current revenues, and no provision made for interest and a sinking fund. The petition does not disclose the existence of a contract or a mortgage lien given to secure the debt. There is only a plain declaration on the 7 warrants without any reference to the electric light plant, and, although it appears from the petition that there are other warrants that were due, no warrant was sued on except those which became due in 1921, the year of the contract, possibly with the theory in view that the warrants might be held to be payable out of the current funds of 1921. The petition of appellant really showed no cause of action against appellee, but although appellant agreed that none of the warrants or other documents complied with articles 772a, 772b, 772c, 772d, 772e and 772f, the facts show that the contract was made and a mortgage given under those articles and if appellant has no cause of action under those articles of the statutes he has no action at all. The contract of purchase of the electric plant, the mortgage lien, the bill of sale of the personal property, the deed to the realty all were proven. In the contract it was provided that if three of the warrants were unpaid at their respective due dates all the warrants should become due. Appellant, however, brought suit on the first five warrants that became due and then a year afterward amended so as to include the other two warrants that had become due in 1921, but none of the 10 that were already due in 1922 was included in the amendment. Appellant studiously avoided any warrants except those due in 1921.

Appellee alleged and proved a case against itself under the articles of the statutes hereinbefore named, but it is repudiated by appellant in his agreed statement. He does not desire to enforce the terms of his contract with appellee, for if he had he would have instituted his suit on all the warrants in the district court and have prayed for a foreclosure of his lien. Appellant briefs his case, not on the theory of his pleadings, but on that disclosed by the pleadings of appellee.

It appears from the record that appellee tendered the property to appellant, but it seems that he does not desire the property but prefers a judgment against appellee, with no lien on the property, although the property is the only thing that is liable for the debt, and he could get nothing on his

debt except what could be realized from a foreclosure and sale of the property. That is the only fund from which appellant can, under the law, obtain any satisfaction for the debt made for the electric plant.

· There seems to have been confusion in pleadings and issues, both parties seeming to seek to repudiate their only tenable positions, and ordinarily when issues have been so mixed and confused injustice results, and courts will reverse and remand the case in order that the pleadings may be amended so as to present the legal points therein; but in this case there is no necessity for such action, and no possible good could grow out of a reversal. Appellee, without assigning any excuse, repudiated a debt justly due by it for an electric plant bought by it from appellant, and, not only tendered the property back to appellant, but absolutely severed all connection with and fully abandoned it. When the property was given back to appellant, he had all that he could have obtained by a suit on the warrants and a judgment thereon and a foreclosure of his lien. Indeed he has more, for he has the property without the cost of foreclosure and sale, and, if such sale was made, the amount realized would be all that appellant could obtain under article 772c, which provides that:

"No such obligation shall ever be a debt of such city or town, but solely a charge upon the properties so incumbered, and shall never be reckoned in determining the power of such city or town to issue bonds for any purpose authorized by law."

While both parties seek to disclaim that the purchase of the electric plant was made under the provisions of article 772a et seq., still it conclusively appears that the effort was made to sell and purchase under that law, and if the sale was not made under that law it was not made at all. Under all the circumstances it would be useless to reverse the judgment, because appellant has obtained all he is entitled to by a return of the property.

The judgment is affirmed.